17m246
94    29

17bm245
106   479

17bm245
o114 947

## Lindsey *vs.* Rutherford, &c.                  Case 26.

### APPEAL FROM FAYETTE CIRCUIT.                Ord. Pet.

Dealing in bills of exchange, without a license, according to the *Rev. Stat., art.* 4, *p.* 556, is neither *malum in se*, nor *malum prohibitum.* Contracts for their sale and purchase are not prohibited by the statute, and are, therefore, valid and binding, though the purchaser or seller may have incurred a penalty.

[The facts of the case are stated in the opinion of the court.—Rep.]

*Lindsey* for appellant—

*Woolley & Shy* for appellee—

Judge CRENSHAW delivered the opinion of the court:

The 1st section of article 4th, Revised Statutes, 556, under the head of revenue and taxation, reads as follows:

" If any person shall carry on, conduct, or engage, directly or indirectly, in the business of a broker or exchange dealer, by the purchase or sale of bank notes, money, bills of exchange, drafts, checks, treasury notes, state stocks, or stocks of the United States, or by the charge of premium for the acceptance or indorsement upon bills or negotiable paper, or shall by any other means, carry on said business without a license, besides the tax imposed, he shall forfeit and pay to the commonwealth one thousand dollars."

The plaintiff, who had never obtained a license to deal in bills of exchange, purchased a bill for $1000, drawn by L. C. Robards, in favor of A. O. Robards or order, and accepted by C. M. Rutherford; and the bill not having been paid, but having been protested for non-payment, the plaintiff, Lindsey, instituted this suit against the drawer, indorser, and acceptor, to recover the amount of the bill, and damages and costs.

The defendants defended themselves upon the ground, that the plaintiff purchased the bill whilst he carried on and conducted the business of exchange dealer for gain, without having obtained a license to carry on said business, and that his purchase of said bill was, therefore, contrary to the policy of the law, and void.

Testimony was introduced conducing to show that the plaintiff had been a dealer in bills of exchange, to a considerable amount, not a great while before his purchase of the bill in suit; and no license to defendant to deal in bills of exchange was exhibited or offered to be proved by him.

The court instructed the jury, in substance, that if they believed from the evidence the plaintiff was in the habit of dealing in bills of exchange without a license, and that the bill sued on was purchased in

the course of said dealing, the plaintiff could not recover; and the jury found a verdict for the defendants, and judgment was rendered accordingly. The plaintiff moved for a new trial, &c., which was overruled by the court, and he has brought the case to this court for revision.

The main question, and the only one necessary to be considered is, whether, by virtue of the 1st section of article 4, Revised Statutes, 556, above quoted, the contract of Lindsey in purchasing the bill of exchange in suit—assuming that he was a dealer in bills of exchange without license—is void. If this question be answered in the affirmative, no recovery can be had, and the circuit court did not err in its instruction to the jury. If it be answered in the negative, the circuit court did err, and the plaintiff is entitled to recover. " A contract is void if prohibited by statute, though the statute only inflicts a penalty, because such a penalty implies a prohibition. If the *contract* be illegal, it makes no difference, in point of law, whether the statute which makes it so has in view the protection of the revenue or any other object. The question to be considered is, does the statute prohibit the *contract* attempted to be enforced? " (*Chitty on contracts*, 419.) The same author continues : " There are many statutes, the object of which is to raise a revenue, rendering it necessary for persons dealing in specified goods to take out licenses for that purpose, and inflicting a penalty on them for their neglect to do so. In these cases there is, however, no intention to prohibit a contract for the sale of such goods, but merely by inflicting a penalty personally on the seller, to secure the receipt of the revenue; and the price of goods sold, even by an unlicensed vendor, might therefore be recovered."

These general principles will enable us to arrive at a proper conclusion in the present case. The dealing in bills of exchange, in view of the statute, is neither *malum in se*, nor *malum prohibitum.* Con-

Dealing in bills of exchange without a license, according to the *Rev. Stat.*, art. 4, page 556,

LINDSEY
vs.
RUTHERFORD.

is neither *malum in se*, nor *malum prohibitum*. Contracts for their sale and purchase are not prohibited by the statute, and are therefore valid and binding, though the purchaser or seller may have incurred a penalty.

*tracts* for their sale and purchase are not prohibited by the statute—they are neither evil in themselves nor evil because forbidden by the statute. The statute strikes no blow at the business itself, but simply declares upon this subject, that, " if any person shall carry on, conduct, or engage, directly or indirectly, in the business of a broker or exchange dealer, by the purchase of bills of exchange, &c., without a license, besides the tax imposed, he shall forfeit and pay to the commonwealth one thousand dollars." The business may be carried on—the business itself is not prohibited—it is lawful to deal in bills of exchange ; but, if carried on without a license, the person doing so shall forfeit and pay to the commonwealth one thousand dollars.

We conclude, therefore, that our statute, in this regard, is essentially a revenue measure, designed to raise revenue from a business esteemed by the legislature as very profitable, and authorizing the requisition of a tax from him who thinks proper to engage in the business.

If, after considering the first section of the act, *supra*, and the general principles of law applicable to the subject, there should remain any doubt as to the correctness of the foregoing conclusion, this doubt must be dispelled, when other parts of the statute are taken into consideration, especially the 7th and 8th sections of the same article.

By the 7th section a penalty is imposed upon persons pursuing certain other callings without a license ; and the 8th section declares that all the contracts of these persons, made without the license required, shall be void. Now, a license is equally required, under a penalty for a failure to obtain it, by persons engaged in the business of exchange dealers, but their *contracts* are not declared void, as done in regard to the contracts of those engaged in the callings mentioned in the said 7th section. If the legislature, whilst denouncing the contracts of tavern-keepers, merchants selling spirituous liquors, and

of persons who stand studs, jacks, or bulls, without a license, as void, intended that the contracts of dealers in bills of exchange should also be void, they would certainly have said so—they would have placed them in the same category. They are, all, embraced in the same article, in different sections, and, if the contracts of all were intended to be placed upon the same footing, the contracts of all, made without the required license, would equally have been denounced as void. The distinction made between them clearly shows the legislative intention not to make the *contracts* of dealers in bills of exchange *without* license, void, but only to inflict a penalty for their conducting the business without a license.

It results that, upon the statements in the pleadings, the court ought, upon the motion of the plaintiff, to have rendered judgment for him, though the verdict of the jury was against him. (*Code of Practice, section* 416.)

Wherefore, the judgment is reversed, and the cause remanded, with directions that judgment be rendered in favor of the plaintiff for the amount of the bill of exchange, &c.