[L. A. No. 3361. Department Two.—October 1, 1914.]

# LUTHER B. WOOD, Respondent, *v.* J. E. KREPPS, et al., Appellants.

CHATTEL MORTGAGE—LOAN BY PERSONAL PROPERTY BROKER—FAILURE TO COMPLY WITH STATUTE—WHETHER BARS FORECLOSURE.—A chattel mortgage executed to a personal property broker to secure a loan is not invalid, nor is he precluded from foreclosing it, because of failure to give to the mortgagor the memorandum or notice of the contents of the note and mortgage and other matters provided for by section 5 of the act (Stats. 1909, p. 969), defining personal property brokers and regulating their charges and business.

ID.—PERSONAL PROPERTY BROKERS—PENALTY FOR NOT COMPLYING WITH STATUTE.—The only penalty imposed by such statute for failure to give the mortgagor the notice or memorandum is a fine not exceeding a specified amount.

ID.—FAILURE OF BROKER TO OBTAIN LICENSE—WHETHER INVALIDATES MORTGAGE.—A chattel mortgage executed to a personal property broker to secure a loan is not void nor unenforceable because he has not complied with an ordinance forbidding him, under penalty, to carry on his business without a license.

ID.—LICENSE—CONTRACTS BY UNLICENSED PERSONS—WHEN INVALID.— When the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is invalid.

ID.—FAILURE TO PROCURE LICENSE—WHEN DOES NOT INVALIDATE CONTRACTS.—But when the object of the statute or ordinance in imposing a license to conduct a harmless and legitimate business is solely for the purpose of yielding a public revenue, not for the purpose of protection, contracts made in the course of such business are valid, notwithstanding a penalty is imposed for a failure to obtain a license to conduct it. And municipal revenue is the sole purpose of the ordinance in question in this case, which requires a license for carrying on the business of loaning money on personal property of the personal property brokerage business in which the plaintiff was engaged and out of which the note and mortgage here involved arose.

ID.—BUSINESS OF LOANING MONEY ON PERSONALTY—EXTENT OF REGULATION BY STATE.—There is no law in this state making the business of loaning money on personal property illegal. It is a legitimate

branch of commercial business, which the state has regulated only to the extent of fixing the maximum rate of interest. The business itself, however, is not affected; it is neither *malum in se* nor *malum prohibitum*.

ID.—LICENSE TO CONDUCT BUSINESS—PURPOSE OF REQUIRING—CONTRACTS OF INDIVIDUALS.—The question of licenses to carry on business is essentially one between the municipality and the person engaging in business within the territorial limits thereof; it is not a matter in which third parties are interested. Whatever penalties are imposed upon business delinquencies are in aid of enforcing the rights of the municipality, and are not intended to operate further so as to defeat contracts between those engaged in business without license and third parties, or to afford the latter an opportunity of repudiating their indebtedness or acquiring property without paying for it.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Grant Jackson, and Theodore Martin, for Appellants.

John F. Poole, for Respondent.

LORIGAN, J.—This action was brought to foreclose a chattel mortgage given as security for the payment of a promissory note for one thousand dollars' principal, with interest at four per cent per month, executed by defendants in favor of the plaintiff. The note and mortgage were executed March 7, 1910, and the mortgage was recorded the day following its execution.

The answer of the defendants set up that at the time of the execution of the note and mortgage the plaintiff was engaged in the city of Los Angeles in carrying on the business of pawnbroking and the business of loaning money for himself and others on personal security and on personal property other than carrying on the business of banking, and as special defenses against the right of plaintiff to recover, alleged: 1. That plaintiff did not at the time of the execution of the note and mortgage—March 7, 1910—nor until October, 1911, give to the defendants the memoranda or notice provided for by section 5 of an act of the legislatue defining personal property brokers and regulating their charges and business (Stats. 1909, p. 969); and, 2. That plaintiff had not

at the time of the execution of said note and mortgage procured a license as required by an ordinance of the city of Los Angeles to authorize him to carry on the business of pawnbroking or the business of loaning money for himself and others upon personal security and upon personal property in which he was engaged.

Plaintiff moved to strike out from the answer these special defenses referred to on the ground that they were immaterial and redundant. The court granted the motion and entered a decree of foreclosure in favor of the plaintiff. Defendants appeal from this decree, insisting that the court erred in striking out the defenses set up in their answer. This is the only point made.

The theory of the defendants in alleging that plaintiff had failed to give them the memorandum or notice of the contents of the note and mortgage and other matters provided for by section 5 of the said act of 1909 at the time the note and mortgage were executed, is, that such failure precluded any recovery by plaintiff. But this theory is erroneous. While the section relied on provides that when a loan such as here is made a memorandum or notice of the contents of the note and mortgage and other matters shall be given the mortgagees, it is not made by the statute essential to the validity of the transaction that this shall be done. It is a statutory duty imposed upon the personal property broker to be performed by him when the loan is made, but after the instrument taken as security is executed. It is a matter which does not at all enter into the contract between the parties, but is collateral to it. The statute itself provides that as a penalty for failure to give the memorandum or notice the broker shall be subjected to a fine not exceeding the specified amount. This is the only penalty which the statute imposes. No further penalty is declared and the contract itself is not in any manner affected by the failure to comply with this provision of the section.

Now as to the ordinance pleaded in the answer. This ordinance alleged to have been in force on and prior to the making of the note and mortgage was a general license ordinance of the city of Los Angeles which declared that it shall be unlawful for any person to commence or carry on any trade, profession, or occupation set forth in the ordinance without having first procured a license to do so; declared that the

amount of such license imposed on any occupation mentioned in the ordinance shall be deemed·a debt to the city to be collected by civil action; provided that "every person, firm or corporation engaged in doing or carrying on the business of pawnbroking or the business of loaning money for himself or any other person upon personal security, upon evidences of indebtedness, assignments of salary, salary warrants or demands, or any personal property other than those carrying on the business of banking" shall pay a license of fifty dollars per annum; and further provided that a violation of any of the provisions of the ordinance shall constitute a misdemeanor punishable by fine or imprisonment, or both.

The theory of the appellants upon this branch of the defense pleaded is that the note and mortgage having been executed at a time when respondent was engaged in the business of a personal property broker as distinguished from that of a pawnbroker without having procured the license required by the ordinance to do so, the note and mortgage given to him were executed in violation of the law and are void.

It is to be observed in considering this claim of appellants that while they allege in their special defenses that respondent was engaged in the business of pawnbroking and also in the business of loaning money upon personal property as a personal property broker (and the section of the ordinance just quoted fixing a license-tax mentions them both), still they are there treated as separate and distinct businesses and the transaction here involved pertains solely to the business of loaning money on personal property—the personal property brokerage business. In their answer, though not heretofore referred to, appellants set up in connection with their pleading based on the ordinance, various regulations prescribed by it for the conduct of the business of pawnbroking and the failure of the respondent to conform to them, as well as a failure to have procured a license for carrying on the business of a personal property broker, and cite cases —notably that of *Levison* v. *Boaz,* 150 Cal. 185 [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825]—where it is held that the business of pawnbroking is subject to police regulations for the benefit of the public; that it may be suppressed or licensed as a municipality sees fit; that when licensed it may be required to be conducted under rules, regulations, and

restrictions, and that if conducted without a license or without conforming to the regulations imposed, contracts of pledge made in the transaction of such business are rendered void. But here we are not concerned with the business of pawnbroking or the validity of contracts made in disregard of regulations imposed by ordinance for the valid conduct of such business because the contract involved here has no relation to that business. It is one alleged to have been entered into with plaintiff while conducting the business of a personal property broker—loaning money on chattel mortgage—without a license; a legitimate business which neither called for nor was subjected to any regulation under the ordinance.

But considered even with respect to such latter business appellants insist that as the note and mortgage were executed to plaintiff while he was engaged in such business and as part of it in violation of the ordinance which forbade under penalty that particular business from being carried on without a license, the note and mortgage are therefore void. The position of counsel for appellants is that where a penalty is fixed in an ordinance for doing business without a license it amounts to a prohibition against doing such business and a contract executed in violation of such prohibition cannot be enforced. There are some authorities which sustain this position to the extreme extent which appellants claim, but this rule is not of general application. Whether the imposition of a penalty under a statute or ordinance is intended to be prohibitory or not is to be determined from a consideration of its nature and terms, and in determining this, certain rules have been established which are generally recognized. The general doctrine now well settled by the authorities is that when the object of the statute or ordinance in requiring a license for the privilege of carryng on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license and a contract made by an unlicensed person in violation of the statute or ordinance is void. This was the rule applied in *Levison* v. *Boaz* to the pawnbroking contract there involved, and that case fairly illustrates its application. On the other hand, it is equally well settled, though it must

be admitted that there are some few authorities to the contrary, that when the object of the statute or ordinance in imposing a license to conduct a harmless and legitimate business is solely for the purpose of yielding a public revenue and not for the purpose of protection, contracts made in the course of such business are valid, notwithstanding a penalty is imposed for a failure to obtain a license to conduct it. This was the purpose—municipal revenue solely—which the municipality had in view by requiring a license for carrying on the business of loaning money on personal property or the personal property brokerage business in which plaintiff was engaged and out of which the note and mortgage here involved arose. There is no law in this state making the business of loaning money on personal property illegal. It is a legitimate branch of commercial business which the state has only regulated to the extent of fixing the maximum rate of interest. The business itself, however, is not affected. It is neither *malum in se* nor *malum prohibitum.* The ordinance does not pretend to prescribe or prohibit the business. Any one may carry it on, the only condition attached to doing so being that the person engaging in it must obtain a license. The only penalty imposed is that if he does not do so he will not only be subject to a civil action at the instance of the city but likewise to a penalty in a criminal proceeding for doing business without having obtained it. The carrying on of the business itself is not prohibited; it is only the carrying on of it without a license. The prohibition runs against the person engaged in it without a license, not against the business itself. The ordinance does not declare that a contract made by any one in the conduct of the various businesses for which licenses are provided to be procured under the ordinances, shall, if a license is not obtained, be invalid; nor is there any provision therein indicating in the slightest that this failure was intended to affect in any degree the right of contract. The primary purpose of the ordinance is to secure revenue by the imposition of license-taxes on the several occupations mentioned in it and not to suppress or to prohibit their being carried on, and while a penalty is, as usual, imposed for failure to obtain the license, this, in the absence of any declaration of a further penalty, is the only one to which the party conducting the business without a license was intended to be subjected. The question of license is essen-

tially one between the city and the person engaging in business within the limits of the municipality. It is not a matter in which third parties are interested. Whatever penalties are imposed upon business delinquencies are in aid of enforcing the rights of the city and are not intended to operate further so as to defeat contracts between those engaged in business without a license and third parties, or to afford the latter an opportunity of repudiating their indebtedness or acquiring property without paying for it.

The rule just declared is supported by the weight of authority. (*Vermont Loan & Trust Co.* v. *Hoffman,* 5 Idaho, 376, [95 Am. St. Rep. 186, 37 L. R. A. 509, 49 Pac. 314]; *Walker* v. *Baldwin & Frick,* 103 Md. 352, [63 Atl. 362]; *Buckman* v. *Bergholz,* 37 N. J. L. 347; *Toocker* v. *Duckworth,* 107 Mo. App. 231, [80 S. W. 693]; *Sunflower Lumber Co.* v. *Turner Supply Co.,* 158 Ala. 191, [132 Am. St. Rep. 20, 48 South. 510]; *Mandelbaum* v. *Gregovich,* 17 Nev. 87, [45 Am. Rep. 432, 28 Pac. 121]; *Larned* v. *Andrews,* 106 Mass. 435, [8 Am. Rep. 346]; *Lindsey* v. *Rutherford,* 56 Ky. 245; *Fairly* v. *Wappoo Mills,* 44 S. C. 227, [29 L. R. A. 215, 22 S. E. 108]; *Harris* v. *Runnels,* 53 U. S. 79, [13 L. Ed. 901]; *Neimeyer* v. *Wright,* 75 Va. 239, [40 Am. Rep. 720]; *Akin* v. *Blaisdell,* 41 Vt. 655; 1 Elliott on Contracts, sec. 267; Sutherland on Statutory Construction, sec. 336.)

We quote from only one of these authorities which, however, discusses at some length the doctrine applicable in cases such as this. In *Vermont Loan & Trust Co.* v. *Hoffman* cited, the action was brought to recover on certain promissory notes and to foreclose a mortgage representing a loan made by plaintiff to defendants. A statute of Idaho required a license to be procured before engaging in the business of loaning money and declared it a misdemeanor to transact such business without having procured it. The defendants set up as a defense to the action that the loan to them was made by plaintiff while engaged in the business of loaning money without having procured such license, and that hence, the transaction was in violation of the law of the state and void. In affirming the action of the trial court in sustaining a demurrer to this defense, the supreme court of that state said:

"From a careful study of all the authorities we think that the better class of authorities and the better reasoning leads to the conclusion that, where the prohibition is implied from

a penalty imposed, as in the case at bar, the prohibition being for the protection of the public revenue, and no declaration in the statute making the prohibited act void, the doing of such act is not illegal. There is nothing in our statutes which makes it unlawful to loan money at interest. There is nothing in our statutes which says that it is unlawful to follow the business of loaning money at interest. Such business is not *malum in se,* nor is it *malum prohibitum.* Any one may conduct the business, but, under our statutes, if he does so, he must obtain the license, and if he carries on such business without paying the license-tax and obtaining the license, he is guilty of a misdemeanor. The offense consists, not in doing the business, for that is not prohibited, but in failing to pay the license-tax. The statute was passed, not to protect the public, not to protect the borrower, nor to prevent the loaning of money at interest, but for the purpose of raising the revenue to be derived from the license-taxes to be collected from those persons who should engage in the business of loaning money at interest. . . . Take the case at bar. The respondent loaned $2,800 to the appellants. The respondent was doing the business of loaning money at interest, in violation of law, without the license. This was a fraud upon the public revenue, but was no injury to the appellants. For such failure the legislature has said to respondent: 'You are guilty of a misdemeanor. The assessor and collector may direct suit against you, and recover the license-tax imposed by statute, together with $20 damages.' The legislature has not further said that, 'you shall not recover back any money which you may loan at interest before paying such license-tax.' It is the duty of the court to construe all of our statutes which relate to the subject in question *in pari materia,* and ascertain what the intention of the legislature was as to the validity of the contract in question. A careful consideration of the said statutes, of the subject matter and object to be obtained, convinces us that it was not the intention of the legislature that a violation of section 6983, *supra,* should be attended with any penalty other than those prescribed by the statutes. If the act of loaning money at interest was injurious to morals or good society or prohibited by law, we could not come to this conclusion. The legislature may, within the limits of the constitution, prescribe traffic regulations, and may impose upon a business a tax, and re-

quire persons intending to engage in such business to obtain, before doing so, a license; and we think the legislature might go one step further, and say that whoever should engage in any business upon which a license-tax is imposed without first paying such license-tax, should not only be fined and imprisoned, one or both, but that such person should not recover upon any contract made by him while engaged in such business without a license. But the legislature has not done so, nor has it shown any intention to attend such forfeiture upon a person violating the statute. Having specified the penalty for a violation of the statute, and further provided for the collection of the license-tax with damages, we are authorized to and do conclude that the legislature did not intend that any further punishment should be inflicted. This conclusion is strengthened by the well-known principle that forfeitures are not favored in law; nor does this court favor the idea of giving one's goods to another without compensation. We think that the respondent clearly has the right to recover back the money which it loaned to the appellants.''

The other authorities cited declare the same doctrine.

The judgment appealed from is affirmed.

Henshaw, J., and Melvin, J., concurred.