**WILLIAMS v. FAVRET.**

No. 11840.

Circuit Court of Appeals, Fifth Circuit.

May 13, 1947.

Rehearing Denied June 17, 1947.

P. Z. Jones and Ross R. Barnett, both of Jackson, Miss., for appellant.

John Harvey Thompson, of Jackson, Miss., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

As appellant stated it in substance in his complaint and in haec verba in his brief, the suit was "for damages caused by defendant's refusal to contract with him for electrical work on a navy contract at Gulfport, Mississippi", which had been awarded to defendant as successful bidder.

The claim was that though he had invited a bid from plaintiff, had used it in bidding and obtaining the contract, and had accepted it, defendant had failed and refused to enter into a subcontract with plaintiff.

Defendant admitted that in making his bid as general contractor he had received and used plaintiff's bid, and that the general contract had been awarded to him, but he categorically denied that he, or anyone acting with his authority, had ever accepted plaintiff's bid or otherwise obligated defendant to subcontract the electrical work to plaintiff.

At the conclusion of plaintiff's evidence,[1] the defendant moved for judgment, and the district judge, before whom the case was tried without a jury, sustained the motion, made findings of fact[2] and of rule,[3] and entered judgment for defendant.

Plaintiff is here insisting that the facts taken as a whole establish that a contract resulted and that it was error to deny him recovery. As his brief presents it, "The action was based upon an exchange of telegrams alleged by appellant to constitute an offer and acceptance which created the agreement to award him a subcontract". The argument is that while the telegrams of the 4th and 6th did not constitute an unconditional acceptance of the bid, they constituted a conditional acceptance, the condition being that defendant, as general contractor, be awarded the contract. Citing Louisiana Civil Code Sections and cases

---

[1] Plaintiff testified: that he, a general electrical contractor, received invitations from general contractors, including the defendant, to submit quotations on the electrical work for the naval station, that by wire, as follows, he submitted estimates to all of them:

"Item 1 Base Bid          $17,500.00
Item 2 Deduct                275.00
Item 3 Deduct                600.00

"If our estimate used wire us collect prior to June 6 or else same is withdrawn."

and that defendant and another contractor had wired him that his bid was used, defendant's wire being as follows:

"June 6
We used your bid for wiring on barracks and dispensary Gulfport."

He testified further: that later on he learned, though not from defendant, that defendant was low bidder; that still later, Harold Favret, defendant's son, told him that it would probably be two or three weeks before the contract would come through and when it did, plaintiff would get the subcontract; that not getting the contract, he wrote defendant on June 26th that he would like to receive the subcontract as early as possible so as to begin getting ready for performance; and that defendant replied: "Acknowledging receipt of your letter of the 26th inst. The electrical work has been let to the Busy Electric Co. Your bid, after given full consideration was found to be incomplete."

He further testified that his bid was not incomplete; that it followed the bid forms, plans and specifications. Harold Favret, called by plaintiff, testified that he was an estimator and that he was not authorized to make contracts, and no proof was offered by plaintiff showing, or tending to show that he was so authorized. In addition, Favret denied plaintiff's testimony that he had stated that plaintiff would receive the electrical subcontract. In explanation of the June 6 telegram, he testified that he sent it in compliance with the request in plaintiff's telegram in order to keep the offer of the bid open.

[2] "(2) That the invitation for bids on the electrical work as shown by the card, Exhibit P2 to the deposition of Harold Favret, and the telegram of June 5th from the plaintiff to the defendant, and the answer of the defendant to the plaintiff by telegram of June 6, 1944, do not constitute a contract; that the words in the telegram of June 6th from defendant to plaintiff, reading as follows: 'We used your bids for wiring on barracks and dispensary Gulfport' did not amount to an acceptance of plaintiff's offer; and that, therefore, no written contract was entered into.

"(3) That the employee of the defendant, Harold Favret, was not authorized to accept an order or to bind the defendant for the work, or to contract; and that, therefore, the said Harold Favret did not ratify and contract on behalf of the plaintiff as against the defendant.

"That the employee Christopher was not authorized to enter into any contract or ratify any contract for the defendant in favor of plaintiff."

[3] "(1) The Court is of the opinion that under the law no contract, written or verbal, was entered into between the plaintiff and the defendant.

"(2) That the relief sought by the complainant should be denied."

construing them,[4] plaintiff develops his argument thus: The obligation was a suspensive obligation so long as the contract from the government was not awarded to appellee under his bid, but the awarding of the contract to appellee converted the conditional into an unconditional obligation.

We cannot agree. Plaintiff's bids to the several contractors were offers expressly made to continue until June 6th, and then be withdrawn in the absence of advices from the contractors that they were used in the figuring. Such advices were sent, and the bids remained open offers until accepted or withdrawn. That an offer does not ripen into a contract until acceptance is hornbook law. Plaintiff recognizes that this is so. He seeks to avoid its effect here by importing into the exchange of telegrams a conditional acceptance. Unfortunately for plaintiff, it is just as much hornbook law that where a contract is claimed as resulting from an offer and an acceptance, the offer must be clear, definite and complete, and the acceptance must be in the terms of the offer. The plaintiff's telegram of the 4th was not a conditional offer. It was an absolute one to continue under the condition fixed until accepted. Defendant's telegram of the 6th sent in direct response to plaintiff's of the 4th contains nothing from which an acceptance of the offer, conditional or otherwise, can be implied.

The district judge was right in holding that the exchange of telegrams constituted no contract. He was right too in holding that plaintiff did not prove a contract resting in parol. The judgment is affirmed.

McCORD, Circuit Judge (dissenting).

I think the exchange of telegrams constituted an offer and acceptance, and that the finding and conclusion of the trial court that there was no contract is clearly erroneous.

Favret, a general contractor, invited Williams, a subcontractor, to submit a bid on the electrical work at the U. S. Naval Training Center at Gulfport, Mississippi. Favret and Williams were strangers to each other, but each was familiar with the procedure for the award of government contracts on such projects, and both of them knew that the general contractor's overall bid would be opened along with other bids at 11 a. m. on June 6, 1944. Knowing that bids would be opened on June 6, 1944, Williams made his bid and advised Favret: "If our estimate used wire us collect prior to June 6 or else same is withdrawn." I think it clear that this language meant that Williams was not willing to leave his offer to the general contractor hanging in mid air, but that he wanted to have it accepted or rejected prior to the submission of the general contractor's bid. Favret, an experienced contractor, understood this qualification of Williams' bid, and, accordingly, moved to protect himself on June 6, 1944, by sending Williams a telegram advising him: "We used your bid for wiring on barracks and dispensary Gulfport." The telegram was sent by Harold Favret, the son and apparent agent of the general contractor. Harold Favret testified that his father authorized him to send the telegram. On that same morning, Harold Favret called Williams by long distance telephone and discussed the bid.

The bid of Favret on the project was accepted by the Government and he received the contract. Williams learned that the contract had been awarded to Favret and he set about ordering supplies and making arrangements to carry out his end of the work. He heard nothing from Favret about starting the work, and it was not until June 28, 1944, in answer to a letter of inquiry, that Favret advised Williams that he had given the electrical work to someone else. Favret advised Williams that the reason he gave the work to someone else was because "your bid * * * was found to be incomplete." But the bid was not incomplete, and Favret had not previously complained. Indeed, Williams' bid was used by Favret as a basis in the general bid which was accepted by the government. The excuse that the bid was incomplete is but an obvious afterthought excuse for avoiding a solemn agreement. The fact is that Favret, after accepting Williams' bid, shopped

---

4 2021, 2026, 2028; Decker v. Renaudin, 10 La.App. 725, 122 So. 600; Monteleone v. Blache, 11 La.App. 99, 120 So. 900.

around and found that he could get some-one else to do the work at a lower price. That a more advantageous contract could be entered into, should not permit the abrogation of a valid and binding contract already entered into.

I think the exchange of telegrams, viewed in their proper setting, clearly demonstrates that it was the purpose and intention of the parties to create an effective and binding contract between them, conditioned only on Favret being awarded the general contract. Williams made his offer, and after Favret advised him within the time limit that he was using it in his general bid, Williams was bound; and after Favret was awarded the government contract, Williams could not withdraw his offer, he could not change his price, *he had to do the work at Favret's call.* The testimony of Harold Favret clearly shows that the telegram was sent to Williams for the purpose of holding him to his bid:

"Q. You were wanting to hold Mr. Williams to his bid? Correct? A. Here is the point. Mr. Williams threatened to withdraw that bid prior to the time we submitted our bids, which, *if we banked on his bid entirely,* and he withdrew it, it would cause us to be in error in our estimate."

Could Williams be bound and Favret remain free to do as he pleased? I know of no such one-sided application, hornbook or otherwise, of the law of contracts.

I agree with the majority opinion that it is hornbook law that an offer does not ripen into a contract until there is an acceptance. But here there was an offer and an acceptance. If the exchange of telegrams did not establish offer and acceptance, what was their purpose and meaning? It is also hornbook law, and in Louisiana the statute law as well, that a contract may be made by more than one instrument; that agreements are construed as a whole; that the construction placed upon an agreement by the parties furnishes a rule for interpretation; and that the terms of the agreement "must be taken in the sense most congruous to the matter of the contract." La.Civil Code, Arts. 1955, 1956, 1952.

In this record we do not have the benefit of the evidence of Lionel F. Favret, the general contractor, for he did not testify. We do have the evidence of his son, Harold Favret, who was his estimator and who sent the telegram of acceptance to Williams with his father's consent. Harold Favret hits the nail on the head when he says he wanted to hold Williams to his bid because "if we banked on his bid entirely, and he withdrew it, it would cause us to be in error in our estimate."

To my mind this is simply a case where a contract was made and one of the parties withdrew because he found later that a better and more favorable contract could be made with someone else. To allow Favret to thus welch on his contract is unthinkable.

The judgment should be reversed and the cause remanded for a new trial. I respectfully dissent.