[Civ. No. 15478. First Dist., Div. One. June 23, 1953.]

WILLIAM P. KLOSE, Appellant, v. SEQUOIA UNION
HIGH SCHOOL DISTRICT et al., Respondents.

Aaronson & Cohn for Appellant.

Louis B. DeMatteis, District Attorney, and Keith C. Sorenson, Assistant District Attorney, for Respondents.

PETERS, P. J.—William Klose, as a "resident, taxpayer, citizen, and elector" of respondent school district brought this proceeding in mandate against the district, its board of trustees, and one Julian Basin, a general contractor who had submitted a bid for the repair of a high school in the district, which bid had been accepted by the board, to compel the board to assess against Basin a penalty of 20 per cent of the amount of the subcontract for electric work submitted by him as part of his bid. The theory is that Basin illegally substituted one subcontractor for another, and that under such circumstances the imposition of the penalty is mandatory under section 4106 of the Government Code. The trial court entered its judgment denying petitioner any relief. Petitioner appeals on the judgment roll.

The facts as they appear in the findings are these: On April 25, 1951, Basin, as a duly licensed general contractor,

submitted to the board a bid for the remodeling of the high school in question. Such bid was accepted by the board, and a contract entered into with Basin. With the bid submitted by Basin was a list of subcontractors. Klose Electric Inc.* was listed as the electrical subcontractor. It is found that "said listing was made in error, and through inadvertence the name of Klose Electric Inc. was listed as the electrical subcontractor, whereas the figure used for the electrical work by respondent Julian Basin in making up his bid was in fact the amount which had been bid to him by the Richmond Electric Company and not the amount which had been bid to him by Klose Electric Inc."; that the amount bid by the Richmond Electric "was approximately $500.00 less than the bid submitted to Julian Basin by Klose Electric Inc."; that thereafter Basin requested permission from the board to change the electrical subcontractor from Klose Electric Inc. to Richmond Electric Company; that the architect for the school board was consulted by the board and his consent to the substitution secured; that on August 3, 1951, the board consented to and approved the requested substitution. The court also found that at no time here involved had Basin submitted a written contract to Klose Electric Inc., nor did Klose Electric Inc. ever refuse to execute such a contract. The court also found that a demand upon the board to impose the penalty was made by petitioner, and that the board has in its possession sufficient funds belonging to Basin to pay the penalty. The court concluded that on these facts petitioner was not entitled to any relief. Such conclusion is sound.

It is the theory of petitioner that Basin had no legal right to request, and the board had no legal power to approve, the substitution here involved. This conclusion is predicated upon petitioner's interpretation of section 4104 (d) of the Government Code. Based on this interpretation, it is contended that under section 4106 of that code the imposition of the 20 per cent penalty is mandatory, and that the board can be compelled to impose the penalty by any "resident, taxpayer, citizen, and elector" of the district by a mandamus proceeding. We express no opinion on the question as to whether mandamus is the appropriate remedy or as to whether petitioner has the legal right to enforce any rights conferred by these sections, inasmuch as we are convinced that, on the merits,

---

*There is no allegation or finding that William Klose, the petitioner, is in any way connected with Klose Electric Inc. Nor is there an allegation or finding that he is not.

the petitioner's interpretation of the sections is unsound, and that, under the facts here involved, no penalty could or should be imposed.

Section 4104 of the Government Code reads as follows:

"No general contractor whose bid is accepted shall, without the consent of the awarding authority, either:

"(a) Substitute any person as subcontractor in place of the subcontractor designated in the original bid.

"(b) Permit any such subcontract to be assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the bid.

"(c) Sublet or subcontract any portion of the work in excess of one-half ($\frac{1}{2}$) of one per cent (1%) of the general contractor's total bid as to which his original bid did not designate a subcontractor.

"(d) The awarding authority may consent to the substitution of another person as a subcontractor, when the subcontractor named in the bid after having had a reasonable opportunity to do so, fails or refuses to execute a written contract, when said written contract, based upon the general terms, conditions, plans and specifications for the project involved, or the terms of such subcontractor's written bid, is presented to him by the contractor."

The penalty section—4106 of the Government Code—reads as follows: "A general contractor violating any of the provisions of this chapter violates his contract and the awarding authority may cancel the contract. After any such violation, the general contractor shall be penalized to the extent of twenty per cent (20%) of the amount of the subcontract involved. Funds recovered through the application of this penalty shall be paid to the State Treasurer who will deposit them in the General Fund."

Petitioner contends that subdivision (d) of section 4104, which was added to the section in 1945, should be interpreted as setting forth the sole situation in which a consent to a substitution can be given by the awarding authority, and urges that otherwise the subdivision would be superfluous. This construction, of course, completely disregards subdivision (a) of the section, which confers plenary power of substitution on the awarding authority. Such a construction, limiting the right of the awarding authority to authorize a substitution to the one situation where the original subcontractor refuses to execute a written contract, would create a completely unworkable system. It would mean that once a general contract

had been accepted by the awarding authority, no substitution of a subcontractor could be made against his will, even though such subcontractor refused to complete the work, or neglected or was unable to handle the job, went out of business or into bankruptcy, or even died. Thus many public projects would be held up or subjected to interminable delays. The basic public policy of the sections involved, and of the sections related to them, is not to grant rights to a subcontractor, but is to assure the reliability of the subcontractors by requiring an initial check by the awarding authority with the assistance of its technical staff, and then to be sure that no subcontractor will be substituted without the approval of the awarding authority, given, as it was in this case, only after a reliability check by the technical staff.

It should be noted that section 4104 expressly grants to the board the right to consent to an assignment or delegation of duties by the original subcontractor to another. But under petitioner's interpretation of subdivision (d), subcontractors, with consent of the awarding authority, could assign their contract or delegate the duties thereunder, but the general contractor, who, as will later be pointed out, owes no contractual duty to the subcontractor until a contract is executed between them, cannot secure the right to a substitution even with the consent of the awarding authority regardless of the cause, except where the subcontractor refuses to execute a written contract. Such an interpretation would lead to absurd results, and would constitute a grave limitation on the general law of contracts. Obviously, subdivision (d) of the section constitutes simply an admonition to the awarding authority to exercise the discretion conferred by subdivision (a) in the situation described—refusal of the subcontractor to execute a contract—by permitting the substitution. In that way subdivisions (a) and (d) can both be given effect. Subdivision (d) is a limitation on subdivision (a) in that one respect, but does not repeal subdivision (a), as petitioner's interpretation would do. That this is the proper interpretation of the section seems obvious. To construe the section otherwise would not only lead to absurd and unfair results, but would be to ascribe to the Legislature an intent to change the fundamental law applicable to the rights of subcontractors on public works.

Petitioner's arguments are necessarily predicated upon the concept that a subcontractor, whose name is submitted with the bid of the general contractor, in some undefined

way, secures some legal rights when the general contractor's bid is accepted by the awarding authority. In the absence of statute that is not the law. A subcontractor bidder merely makes an offer that is converted into a contract by a regularly communicated acceptance conveyed to him by the general contractor. No contractual relationship is created between the subcontractor and the general contractor even though the bid is used as part of the general overall bid by the general contractor and accepted by the awarding authority. (*Williams* v. *Favret,* 161 F.2d 822; 1 Corbin on Contracts, p. 58, § 24, particularly cases cited in fn. 11 on p. 59.)

 In order to uphold petitioner's interpretation of section 4104(d) we would have to hold that the Legislature intended by that amendment to change the general law of contracts, and to confer on subcontractors the irrevocable right to perform the contract as soon as the awarding authority accepted the general contractor's bid except where the subcontractor refuses to execute a contract. We can find no such expressed or implied intent in the sections. They appear in the chapter of the public works law dealing with "subletting and subcontracting" which are regulatory provisions. None of those sections is aimed at conferring rights on the subcontractors, but are all aimed at protecting the public and the awarding authority.

 In the instant case Basin used in his bid the amount bid by Richmond Electric Company, but, through inadvertence, inserted the name of Klose Electric Inc. The bid of Klose Electric Inc. exceeded that of Richmond by about $500. When the awarding authority, after a proper investigation and recommendation by its architect of the reliability of Richmond Electric Company consented to the substitution, it was but consenting to the correction of a mutual mistake or a remediable unilateral mistake in the contract as awarded. (See annos. 59 A.L.R. 809, 827; 80 A.L.R. 586, 588; 107 A.L.R. 1451, 1452.) There are there collected many cases, with but a few *contra,* establishing the rule that even without a mistake of the type that would permit reformation, and where the mistake is unilateral, the courts will grant to the general contractor the right of equitable rescission where his bid was based on an honest and not grossly negligent mistake. This rule obtains in California (*M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7]). The court in that case held that even though the form calling for bids

expressly stated that bidders "will not be released on account of errors," that provision applied only to errors of judgment and not to "clerical or mathematical mistakes." Otherwise, said the court, a businessman would be unjustly required to perform a contract he had no intention of making. At page 703 the court stated: "Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. The statement in the bid form in the present case can be given effect by interpreting it as relating to errors of judgment as distinguished from clerical mistakes. If we were to give the language the sweeping construction contended for by the city, it would mean holding that the contractor intended to assume the risk of a clerical error no matter in what circumstances it might occur or how serious it might be. Such interpretation is contrary to common sense and ordinary business understanding and would result in the loss of heretofore well-established equitable rights to relief from certain types of mistake."

By analogy this language is applicable to the problem of the interpretation of section 4104. Certainly there is nothing in that regulatory statute, or in any other section of the chapter where it appears, that indicates that by the 1945 amendment the Legislature intended to limit or take away from a general contractor his common law right of rescission. If this is so, then Basin could have rescinded the entire contract because of the mistake. The board, rather than go to the expense and trouble of securing new bids, and rather than delay the project, by consenting to the substitution of the company originally intended and whose bid for electric work was in fact the amount used in the master bid by Basin, merely was compromising the contractor's right of rescission. This the board had the legal right to do.

For these several reasons, the judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 23, 1953, and appellant's petition for a hearing by the Supreme Court was denied August 20, 1953.