[Civ. No. 28273.    Second Dist., Div. One.    Dec. 4, 1964.]

KIELY CORPORATION, Plaintiff and Respondent, v. H. C. GIBSON, Defendant and Appellant.

Wallace & Wallace and Allan W. Wallace for Defendant and Appellant.

Thelen, Marrin, Johnson & Bridges, James W. Baldwin, Robert K. Worrell and George M. Perry for Plaintiff and Respondent.

LILLIE, J.—Plaintiff sued for damages for breach of a construction subcontract; judgment was entered in favor of the defendant. Thereafter plaintiff moved for a new trial; the motion was granted upon grounds of the insufficiency of the evidence to justify the decision and that the judgment was "against law." Defendant appeals from the resulting order.

The subcontract was for demolition, site clearance and other work connected with the construction of an elementary school in Torrance for which project plaintiff had been awarded the general contract. Bids were invited, and the low bid was eventually telephoned to plaintiff by one Andy Thomas on behalf of "Anderson Grading." When plaintiff's project manager proceeded to secure Anderson's license number for inclusion in a contract then being drafted, he was given a number by the licensing agency which it had assigned to defendant Gibson. Another contract, the one here in suit, was then prepared by plaintiff and forwarded to Thomas. It was returned in executed form and signed: "H. C. Gibson, by Andy Thomas, Partner." Although the law so provided (Gov. Code, § 4104),[1] the above change admittedly was not communicated to the awarding authority—in this case, the Torrance Unified School District; nor was the district's consent to such change ever sought. Thus, in answer to written interrogatories, plaintiff declared that the name of the only subcontractor submitted to the public authority was "Anderson Grading, Garden Grove."

Thomas, it appears, was married to a cousin of the defendant. He knew Gibson was a contractor, had been in his office in Brawley and had taken some of Gibson's letterhead stationery. He and an associate having commenced work on the Torrance job, on October 18 of 1960, a progress demand payment was forwarded to plaintiff on one of Gibson's letterheads; the demand ostensibly bore defendant's signature. Plaintiff refused payment because, among other

[1]Renumbered § 4107 and amended by Stats. 1963, ch. 2125, § 8.

things, no bond had been posted by Thomas, and material suppliers were also asking to be paid. When work on the subcontract stopped, plaintiff's manager insisted that Gibson perform. The latter refused, stating that he had no contract. Subsequently, after being importuned by materialmen, Gibson asked plaintiff by letter to pay these suppliers. In response to this request, checks were sent to Gibson in the total amount of $15,059.15 and payable jointly to him and the suppliers. Defendant endorsed each check and sent it on to the other payee. He testified that he received nothing from the proceeds thereof.

On December 28, 1960, Gibson for the first time visited the job site. He again advised plaintiff's project manager that he had no contract with plaintiff but offered to do the rest of the job for the unexpended balance of the contract price if plaintiff would give him a contract in his own name. Plaintiff elected to rely on the contract signed by Thomas, its project manager having testified that he was told by defendant, upon receipt of the contract in suit, that Thomas had authority to sign for him. (This was denied by defendant.)

Thereafter plaintiff finished the job. The damages sought represent the difference between the cost thereof and the contract price.

The court made findings of fact favorable to defendant from which it drew the conclusion of law that "plaintiff having listed ANDERSON GRADING as a demolition and site clearance subcontractor on the Victor Elementary School Job, and never having sought permission to change such subcontractor, plaintiff is estopped by reason thereof from claiming against defendant Gibson or anyone except the principals of Anderson Grading." It further concluded that at no time did any contract exist between plaintiff and Gibson. Implicit in the above conclusions is the determination that plaintiff's failure to comply with the applicable provisions of the statute then governing (Gov. Code, § 4104, supra) barred its right to recovery. ▮ Unless the evidence would warrant a judgment in favor of the moving party, it is error to grant a new trial. (*Ellis* v. *City of Los Angeles,* 167 Cal.App.2d 180, 186 [334 P.2d 37].) The evidence in such regard being undisputed, we must decide whether plaintiff's noncompliance with the law is dispositive of this appeal.

■ "[I]t has been repeatedly declared in this state that 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract.' [Citation.]" (*Loving & Evans* v. *Blick*, 33 Cal.2d 603, 607 [204 P.2d 23].) Former section 4104 provides in pertinent part that, "No general contractor whose bid is accepted shall, without the consent of the awarding authority, either: (a) Substitute any person as subcontractor in place of the subcontractor designated in the original bid. (b) Permit any such subcontract to be assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the bid. . . ." Former section 4106 (renumbered § 4110 and amended by Stats. 1963, ch. 2125, § 7) imposes a penalty for the violation of the enactment just quoted: "A general contractor violating any of the provisions of this chapter violates his contract and the awarding authority may cancel the contract. After any such violation, the general contractor shall be penalized to the extent of twenty percent (20%) of the amount of the subcontract involved. . . ."

■ We must now determine whether the imposition of the above penalty was for the purpose of regulating such transactions for the protection of the public—and not simply as a means of raising revenue (Cf. *Wood* v. *Krepps*, 168 Cal. 382, 386-387 [143 P. 691, L.R.A. 1915B 851].) In *Klose* v. *Sequoia Union High School Dist.*, 118 Cal.App.2d 636, 641 [258 P.2d 515], the court had occasion to consider the subject matter of the instant legislation. It noted that the subject statutes "appear in the chapter of the public works law dealing with 'subletting and subcontracting' which are regulatory provisions." Continuing, "None of those sections is aimed at conferring rights on the subcontractors, but are all aimed at protecting the public and awarding authority." Earlier, the court declared that, "The basic public policy of the sections involved, and of the sections related to them is not to grant rights to a subcontractor, but is to assure the reliability of the subcontractors by requiring an initial check by the awarding authority with the assistance of its technical staff, and then to be sure that no subcontractor will be substituted without the approval of the awarding authority, given, as it was in this case, only after a reliability check by the technical staff." (P. 640.) See also *Fred J. Early, Jr. Co.* v. *County Sanitation Dist.*, 214 Cal.App.2d 505, 508 [29 Cal.

Rptr. 633], in which the court said: "The [*Klose*] opinion does state that the basic public policy of the sections involved, and related sections, is to give the awarding authority a right to check upon the reliability of subcontractors named in the bid and of anyone sought to be substituted for them." In the present case, of course, the awarding authority had no possible opportunity to check upon the reliability of defendant Gibson as a subcontractor for the work in question since his name was never submitted by the plaintiff general contractor.

On the other hand, plaintiff also relies upon the *Klose* decision. It emphasizes the statement above quoted that the basic public policy of the subject sections "is not to grant rights to subcontractors," arguing that there is nothing in former section 4104 which renders this contract void as between the parties. Cited in this connection is *Wood* v. *Krepps, supra,* 168 Cal. 382, involving a failure to procure a pawnbroker's license, assertedly to the effect that an indirect connection between the obligation of a contract and some restricted transaction will not bar enforcement thereof. As noted above, however, in the *Wood* case, "The statute was passed, not to protect the public, not to protect the borrower, nor to prevent the loaning of money at interest, but for the purpose of raising the revenue to be derived from the license-taxes to be collected from those persons who should engage in the business of loaning money at interest. . . ." (P. 389.)

Plaintiff also invokes the principle that "[a] bargain collaterally and remotely connected with an illegal purpose or act is not rendered illegal thereby if proof of the bargain can be made without relying upon the illegal transaction." (Rest., Contracts, § 597.) ■ Although imposing a penalty, the governing statutes do not declare the transaction at bar to be illegal per se; but considerations of public policy discussed in the *Klose* and *Early* cases require us to treat it as such (*Harriman* v. *Tetik,* 56 Cal.2d 805, 811 [17 Cal.Rptr. 134, 366 P.2d 486].) ■ That being so, " 'The test,' . . . 'whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his case without showing that he has broken the law, the law will not assist him, whatever his claim in justice may be upon the defendant.' " (*C.I.T. Corp.* v. *Breckenridge,* 63 Cal.App.2d 198, 200 [146 P.2d 271].) ■ It is clear from the allegations

of the complaint, and subsequently from the proof offered in support thereof, that plaintiff could not establish any cause of action against defendant without revealing that it had broken the law. Such violation was an integral and essential part of the transaction upon which the asserted cause of action was based.

Still another consideration militates against plaintiff's position on this appeal. Section 4107 (renumbered § 4112 and amended by Stats. 1963) provides that, ''The failure on the part of a contractor to comply with any provision of this chapter does not constitute a defense to the contractor in any action brought against him by a subcontractor.'' No such privilege, on the other hand, is extended to the general contractor; the omission of the Legislature to do so is significant. ■ ''Under the familiar maxim of *expressio unius est exclusio alterius* it is well settled that, when a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded.'' (*Collins* v. *City & County of San Francisco,* 112 Cal.App.2d 719, 731 [247 P.2d 362].) ■ We are under a duty to ascertain the legislative intent in these matters, and we do so by the application of the above maxim to the situation at bar.

Plaintiff criticizes the decision of the trial court, nullified in effect by the order appealed from, that there was an estoppel to assert the claims contained in the complaint; it is contended that defendant, rather than plaintiff, is estopped to urge the illegality of the subject agreement. Defendant's estoppel is said to be *in pais,* proceeding upon the theory that by its conduct or declarations defendant misled plaintiff to its prejudice. (*American National Bank of San Francisco* v. *A. G. Somerville, Inc.,* 191 Cal. 364, 372-373 [216 P. 376].) It is further pointed out that the acceptance of plaintiff's checks constituted a ratification by him of acts of Thomas. ■ But it is the rule that, ''An illegal contract cannot be ratified. . . .'' (*Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 91 [109 P.2d 650]), and it is also established that no person, at least in the absence of special circumstances, is estopped from asserting the illegality of a transaction. (*Wells* v. *Comstock,* 46 Cal.2d 528, 532 [297 P.2d 961].) ■ We recognize that there is ''a wide range of exceptions'' to the general rule that parties to an illegal contract cannot seek the assistance of the courts upon a breach thereof (*Harriman* v. *Tetik, supra,* 56 Cal.2d 805, 811); for reasons already mentioned, however, we do not believe that the present

litigation can be categorized as one such exception. ■ The various policy considerations are mentioned in *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 151 [308 P.2d 713], after which the court furnished this guideline: "In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved." It cannot be here contended that defendant will be unjustly enriched because the evidence is without contradiction that he endorsed all of plaintiff's checks to the other payees and received nothing from the proceeds thereof. Likewise without dispute is plaintiff's noncompliance with the governing legislation. ■ While mindful of the principle that the trial court is clothed with broad discretionary powers in the consideration and determination of motions for a new trial, an appellate court is required to reverse where it must be said as a matter of law that there is no substantial evidence to support a contrary judgment. ■ Too, since the court did not fail to find on any issue, since the findings are consistent and unambiguous and certain, and since the evidence is sufficient in law to support the findings, the decision is not "against law." (*Renfer* v. *Skaggs,* 96 Cal.App.2d 380, 385 [215 P.2d 487].) This is a case, in short, where the trial court in granting a new trial based its order upon an erroneous concept of legal principles applicable to the facts at bar; a reversal accordingly becomes necessary. (*Estate of Baird,* 198 Cal. 490, 507 [246 P. 324].)

The order is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 27, 1965.