[L. A. No. 29607. In Bank. Aug. 5, 1969.]

SOUTHERN CALIFORNIA ACOUSTICS CO., INC., Plaintiff and Appellant, v. C. V. HOLDER, INC., et al., Defendants and Respondents.

Munns & Kofford, Munns, Kofford, Hoffman, Hunt & Throckmorton, Milton J. Morris, David M. Raatz, Jed L. Kelson and Gordon Hunt for Plaintiff and Appellant.

Raymond H. Levy as Amicus Curiae on behalf of Plaintiff and Appellant.

Grant & Popovich and Irvin Grant for Defendants and Respondents.

TRAYNOR, C. J.—Plaintiff appeals from a judgment of dismissal entered after a demurrer to its second amended complaint was sustained without leave to amend.

Plaintiff alleged that it is a licensed specialty subcontractor. On November 24, 1965, it submitted by telephone to defendant C. V. Holder, Inc., a general contractor, a subcontract bid in the amount of $83,400 for the furnishing and installation of acoustical tile on a public construction job. Later that day Holder submitted a bid for the prime contract to codefendant Los Angeles Unified School District. As required by law, Holder listed the subcontractors who would perform work on the project of a value in excess of one-half of one percent of the total bid.[1] Holder listed plaintiff as the

---

[1]Government Code section 4104 provides: ''Any officer, department, board or commission taking bids for the construction of any public work or improvement shall provide in the specifications prepared for the work or improvement or in the general conditions under which bids will be received for the doing of the work incident to the public work or improvement that any person making a bid or offer to perform the work, shall, in his bid or offer, set forth:

'' (a) The name and the location of the place of business of each subcontractor who will perform work or labor or render service to the prime contractor in or about the construction of the work or improvement in an amount in excess of one-half of 1 percent of the prime contractor's total bid.

'' (b) The portion of the work which will be done by each such subcontractor under this act. The prime contractor shall list only one subcontractor for each such portion as is defined by the prime contractor in his bid.''

acoustical tile subcontractor. Holder was subsequently awarded the prime contract for construction of the facility and executed a written contract with the school district on December 9, 1965. A local trade newspaper widely circulated among subcontractors reported that Holder had been awarded the contract and included in its report the names of the subcontractors listed in Holder's bid. Plaintiff read the report and, acting on the assumption that its bid had been accepted, refrained from bidding on other construction jobs in order to remain within its bonding limits.

Sometime between December 27, 1965, and January 10, 1966, Holder requested permission from the school district to substitute another subcontractor for plaintiff, apparently on the ground that plaintiff had been inadvertently listed in the bid in place of the intended subcontractor. The school district consented, and the substitution was made. Plaintiff then sought a writ of mandamus to compel the school district to rescind its consent to the change in subcontractors. The trial court sustained the district's demurrer and thereafter dismissed the proceeding. Plaintiff did not appeal. Plaintiff then brought this action for damages against Holder and the school district.

Plaintiff contends that the trial court erred in sustaining the demurrer on the ground that the facts alleged in its complaint would support recovery of damages for breach of contract, breach of a statutory duty, and for negligence. We conclude that plaintiff has stated a cause of action for breach of a statutory duty.

There was no contract between plaintiff and Holder, for Holder did not accept plaintiff's offer. ■ Silence in the face of an offer is not an acceptance, unless there is a relationship between the parties or a previous course of dealing pursuant to which silence would be understood as acceptance. (See *Wold* v. *League of the Cross* (1931) 114 Cal.App. 474, 479-481 [300 P. 57] ; *Wood* v. *Gunther* (1949) 89 Cal.App.2d 718, 730-731 [201 P.2d 874] ; 1 Williston on Contracts (3d ed. 1957) §§ 91-91A ; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 60, pp. 65-67.) No such relationship or course of dealing is alleged. Nor did Holder accept the bid by using it in presenting its own bid. ■ In the absence of an agreement to the contrary, listing of the subcontractor in the prime bid is not an implied acceptance of the subcontractor's bid by the general contractor. (*Klose* v. *Sequoia Union High*

*School Dist.* (1953) 118 Cal.App.2d 636, 641 [258 P.2d 515] ; *Norcross* v. *Winters* (1962) 209 Cal.App.2d 207, 217 [25 Cal. Rptr. 821]. See *Williams* v. *Favret* (1947) 161 F.2d 822; 1 Corbin on Contracts (1963) § 24 and fn. 11 at pp. 72-73.) The listing by the general contractor of the subcontractors he intends to retain is in response to statutory command (Gov. Code, § 4104) and cannot reasonably be construed as an expression of acceptance. (Cf. *Western Concrete Structures Co.* v. *James I. Barnes Constr. Co.* (1962) 206 Cal.App.2d 1, 13 [23 Cal.Rptr. 506] ; *Klose* v. *Sequoia Union High School Dist., supra,* 118 Cal.App.2d 636, 641.)

■ Plaintiff contends, however, that its reliance on Holder's use of its bid and Holder's failure to reject its offer promptly after Holder's bid was accepted constitute acceptance of plaintiff's bid by operation of law under the doctrine of promissory estoppel. Section 90 of the Restatement of Contracts states : "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This rule applies in this state. (*Drennan* v. *Star Paving Co.* (1958) 51 Cal.2d 409, 413 [333 P.2d 757].) Before it can be invoked, however, there must be a promise that was relied upon. (*Bard* v. *Kent* (1942) 19 Cal.2d 449, 453 [122 P.2d 8, 139 A.L.R. 1032] ; *Hilltop Properties, Inc.* v. *State of California* (1965) 233 Cal.App.2d 349, 364 [43 Cal.Rptr. 605] ; 1A Corbin on Contracts (1963) § 200, p. 218.)

In *Drennan,* we held that implicit in the subcontractor's bid was a subsidiary promise to keep his bid open for a reasonable time after award of the prime contract to give the general contractor an opportunity to accept the offer on which he relied in computing the prime bid. The subsidiary promise was implied "to preclude the injustice that would result if the offer could be revoked after the offeree had acted in detrimental reliance thereon." (51 Cal.2d at p. 414.)

Plaintiff urges us to find an analogous subsidiary promise not to reject its bid in this case, but it fails to allege facts showing the existence of any promise by Holder to it upon which it detrimentally relied. Plaintiff did not rely on any promise by Holder, but only on the listing of subcontractors required by section 4104 of the Government Code and on the statutory restriction on Holder's right to change its listed subcontractors without the consent of the school district.

(Gov. Code, § 4107.) Holder neither accepted plaintiff's offer, nor made any promise or offer to plaintiff intended to "induce action or forbearance of a definite and substantial character. . . ."

Plaintiff contends, however, that the Subletting and Subcontracting Fair Practices Act[2] confers rights on listed subcontractors that arise when the prime contract is awarded and that these rights may be enforced by an action for damages. Before that act was adopted in 1963, it was settled that the Government Code sections governing subcontracting, which the act superseded, conferred no rights on subcontractors. (*Klose* v. *Sequoia Union High School Dist., supra,* 118 Cal. App.2d 636, 641.) *Klose* was a proceeding in mandate brought by a taxpayer against the awarding authority to compel the latter to assess a penalty against a prime contractor. The prime contractor had changed subcontractors with the consent of the awarding authority on the ground that the original listing had been the result of error. The plaintiff contended that under the language of then Government Code section 4104, subdivision (d)[3] an awarding authority had no legal power to consent to the change on the ground stated and that the substitution was therefore in violation of the statute. Such a violation would render the prime contractor liable for penalties provided for by then section 4106. (Now § 4110.)

The court denied relief on the ground that the language of subdivision (d) of section 4104 that authorized the substitution of another for a subcontractor who failed to execute a

[2]Stats. 1963, ch. 2125, pp. 4410-4414, amending and renumbering sections 4100-4108 of the Government Code. These sections of the Government Code set out requirements for listing of subcontractors in the prime bid and for allowable substitutions of listed subcontractors.

[3]Prior to the 1963 act, section 4104 provided:

"No general contractor whose bid is accepted shall, without the consent of the awarding authority, either:

"(a) Substitute any person as subcontractor in place of the subcontractor designated in the original bid.

"(b) Permit any such subcontract to be assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the bid.

"(c) Sublet or subcontract any portion of the work in excess of one-half (½) of one per cent (1%) of the general contractor's total bid as to which his original bid did not designate a subcontractor.

"(d) The awarding authority may consent to the substitution of another person as a subcontractor, when the subcontractor named in the bid after having had a reasonable opportunity to do so, fails or refuses to execute a written contract, when said written contract, based upon the general terms, conditions, plans and specifications for the project involved, or the terms of such subcontractor's written bid, is presented to him by the contractor."

written contract did not limit the awarding authority's discretion to consent to the substitution of subcontractors in other situations. In so concluding the court listed a series of situations in which substitutions not provided for by subdivision (d) would be necessary to the efficient execution of a public project.[4] The court also concluded that the purpose of the listing and substitution sections was not to grant rights to listed subcontractors, but to provide an opportunity to the awarding authority to investigate and approve the initial subcontractors and any proposed substitutions.

The amendments made by the 1963 Subletting and Subcontracting Fair Practices Act stated the purposes of the statute in a preamble (§ 4101)[5] and completely revised the section dealing with substitution of subcontractors, renumbering it section 4107.[6] ■ The purpose of the amended statute is

---

[4] Referring to the plaintiff's construction of section 4104 the court stated: "Such a construction, limiting the right of the awarding authority to authorize a substitution to the one situation where the original subcontractor refuses to execute a written contract, would create a completely unworkable system. It would mean that once a general contract had been accepted by the awarding authority, no substitution of a subcontractor could be made against his will, even though such subcontractor refused to complete the work, or neglected or was unable to handle the job, went out of business or into bankruptcy, or even died." (118 Cal. App.2d at pp. 639-640.)

[5] "The Legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils." (Gov. Code, § 4101.)

[6] "No prime contractor whose bid is accepted shall:

"(a) Substitute any person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority may consent to the substitution of another person as a subcontractor, when the subcontractor listed in the bid after having had a reasonable opportunity to do so fails or refuses to execute a written contract, when such written contract, based upon the general terms, conditions, plans and specifications for the project involved or the terms of such subcontractor's written bid, is presented to him by the prime contractor, or becomes insolvent or fails or refuses to perform a written contract for the work or fails or refuses to meet the bond requirements of the prime contractor as set forth in Section 4108. Prior to approval of any such substitution the awarding authority shall give notice in writing of at least three working days to the listed subcontractor of the prime contractor's request to substitute another subcontractor unless such listed subcontractor has himself advised the awarding authority in writing that he has knowledge of the prime contractor's request. Such notice may be served by registered mail to the last known address of such subcontractor.

"(b) Permit any such subcontract to be voluntarily assigned or transferred or allow it to be performed by anyone other than the original

not limited, as *Klose* had concluded with respect to the prior statute, to providing the awarding authority with an opportunity to approve substitute subcontractors. Its purpose is also to protect the public and subcontractors from the evils attendant upon the practices of bid shopping and bid peddling subsequent to the award of the prime contract for a public facility.[7] Thus section 4107 now clearly limits the right of the prime contractor to make substitutions and the discretion of the awarding authority to consent to substitutions to those situations listed in subdivision (a), all of which are keyed to the unwillingness or inability of the listed subcontractor properly to perform.[8] Unless a listed subcontractor "becomes insolvent or fails or refuses to perform a written contract for the work or fails or refuses to meet the bond requirements of the prime contractor," the prime contractor may not substitute another subcontractor for the listed subcontractor and the awarding authority may not consent to such a substitution until the contract is presented to the listed subcontractor and he, after having had a reason-

---

subcontractor listed in the original bid, without the consent of the awarding authority.

"(c) Other than in the performance of 'change orders' causing changes or deviations from the original contract, sublet or subcontract any portion of the work in excess of one-half of 1 percent of the prime contractor's total bids as to which his original bid did not designate a subcontractor." (Gov. Code, § 4107.)

[7]Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job. (See Schueller, *Bid Depositories* (1960) 58 Mich.L.Rev. 497, 498, fn. 6; Note (1967) 53 Va.L.Rev. 1720, 1724.) The statute is designed to prevent only bid shopping and peddling that takes place after the award of the prime contract. The underlying reasons are clear. Subsequent to the award of the prime contract at a set price, the prime contractor may seek to drive down his own cost, and concomitantly increase his profit, by soliciting bids lower than those used in computing his prime bid. When successful this practice places a profit squeeze on subcontractors, impairing their incentive and ability to perform to their best, and possibly precipitating bankruptcy in a weak subcontracting firm. (See Gov. Code, § 4101; Note, *supra*, 53 Va.L.Rev. 1720, 1724; Ring Constr. Corp. (1947) 8 T.C. 1070, 1076.) Bid peddling and shopping prior to the award of the prime contract foster the same evils, but at least have the effect of passing the reduced costs on to the public in the form of lower prime contract bids.

[8]It is significant that the amended statute allows for substitution of subcontractors in all those situations listed by the court in *Klose* as necessary to efficient construction of public facilities. (See fns. 4 and 6, *supra*.) Accordingly, there is no basis for construing the present statute, as the court in *Klose* felt compelled to construe subdivision (a) of former section 4104, to confer "plenary power of substitution on the awarding authority." (118 Cal.App.2d at p. 639.)

able opportunity to do so, fails or refuses to execute the written contract. Accordingly, under the facts as pleaded in this case, Holder had no right to substitute another subcontractor in place of plaintiff, and the school district had no right to consent to that substitution.

Since the purpose of the statute is to protect both the public and subcontractors from the evils of the proscribed unfair bid peddling and bid shopping (Gov. Code, §§ 4100, 4101), we hold that it confers the right on the listed subcontractor to perform the subcontract unless statutory grounds for a valid substitution exist. Moreover, that right may be enforced by an action for damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had he not wrongfully been deprived of the subcontract. (See *Bermite Powder Co.* v. *Franchise Tax Board* (1952) 38 Cal.2d 700, 703 [242 P.2d 9]; *Paxton* v. *Paxton* (1907) 150 Cal. 667, 670 [89 P. 1083]; Civ. Code, § 3523.) Accordingly, plaintiff has stated a cause of action against defendant Holder for breach of section 4107.[9]

The question remains whether plaintiff has stated a cause of action against the school district. Since there is no statutory provision for the recovery of damages against a public entity for its consenting to a substitution of subcontractors in violation of section 4107, the school district is not liable for such violation. (Gov. Code, § 815.) Plaintiff contends, however, that it was a third-party beneficiary of the contract between Holder and the school district and that therefore it may recover against the school district for breach of contract. (See Gov. Code, § 814.) There is no merit in this contention. Plaintiff was listed in response to statutory command and not because the contracting parties' purpose was expressly to

[9]In addition to seeking recovery of its anticipated profits of $15,000, plaintiff in a separate cause of action, seeks to recover his expenses of $500 ''in preparation and planning to perform the contract'' on the theory that its incurring of those expenses was caused by Holder's negligence in listing plaintiff as a subcontractor. We find no basis under the facts pleaded for a separate cause of action for negligence. After plaintiff learned, however, that it had been listed as a subcontractor in a prime contract awarded to Holder, it was entitled to assume that it would be offered the subcontract as required by section 4107 until Holder notified it of the intended substitution. Expenses reasonably incurred during this period may be recovered in addition to plaintiff's anticipated profits in order to give it the benefit of the bargain to which it was entitled. (*Gollaher* v. *Midwood Constr. Co.* (1961) 194 Cal.App.2d 640, 649 [15 Cal.Rptr. 292]; Rest., Contracts, § 346, com. g; 11 Williston on Contracts (3d ed. 1968) § 1363.)

benefit it. Accordingly, plaintiff was at most an incidental beneficiary and therefore cannot recover as a third-party beneficiary of the contract between Holder and the school district. (Civ. Code, § 1559; *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296, 302 [59 Cal.Rptr. 286]; *Southern Cal. Gas Co.* v. *ABC Constr. Co.* (1962) 204 Cal.App.2d 747, 751-752 [22 Cal.Rptr. 540].)

The judgment of dismissal as to defendant school district is affirmed. The judgment of dismissal as to defendant Holder is reversed with directions to the trial court to overrule the demurrer as to defendant Holder and allow it to answer.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondents' petition for a rehearing was denied September 4, 1969.