[Civ. No. 38195. First Dist., Div. Four. Sept. 30, 1976.]

COAST PUMP ASSOCIATES, Plaintiff and Appellant, v.
STEPHEN TYLER CORPORATION, Defendant and Respondent.

### COUNSEL

Pelletreau, Moses & Larson, William P. Moses and Richard Jacobsmeyer for Plaintiff and Appellant.

Passalacqua & Mazzoni and James R. Mazzoni, Jr., for Defendant and Respondent.

## OPINION

**EMERSON, J.**[*]—Plaintiff Coast Pump Associates (hereafter appellant) appeals from a judgment that it take nothing upon its complaint against defendant Stephen Tyler Corporation (hereafter respondent). Appellant contends that respondent, the prime contractor on a public construction project, violated the Subletting and Subcontracting Fair Practices Act (Gov. Code, § 4100 et seq.)[1] when it refused to honor a bid submitted by appellant as subcontractor. In rendering judgment for respondent, the trial court made a finding of fact, among others, that respondent did not use appellant's bid in computing its own overall bid figure. Consequently it concluded that respondent did not act improperly as to appellant and that appellant therefore suffered no damage. We are of the opinion that respondent clearly violated the Fair Practices Act and that whether or not it used appellant's bid is immaterial. In such case, appellant is entitled to recover as damages the benefit of the bargain it would have realized had it not wrongfully been deprived of the subcontract. (*Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 727 [79 Cal.Rptr. 319, 456 P.2d 975].)

*Facts*

Appellant submitted a bid to furnish pumping equipment for use by respondent in the construction of a sewage collection system for the Hopland Public Utilities District. The equipment which appellant offered to supply was of the "Hydromatic" brand. Respondent, preparatory to bidding on the prime contract, recorded figures on its bid form for items B1 and B2 (pumping stations one and two) which apparently were based in part on the prices quoted by appellant. Respondent also listed the brand name of appellant's equipment in the spaces provided on the bid form, which form was furnished or required to be used by the district.

Respondent's bid on the prime contract was due at 2 p.m. on July 31, 1974. At 1:40 p.m. on that date, Stephen Tyler, respondent's president, learned from his office that Walton-Hayes Associates had offered to supply Smith & Loveless pumping machinery at prices lower than that quoted by appellant for the Hydromatic equipment. Tyler

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Except as noted all further statutory references are to the Government Code.

decided to use the Walton-Hayes figures in computing his own final bid. He did not, however, remove the name "Hydromatic" from the bid form or alter the prices previously recorded on the form for items B1 and B2; he merely put down a figure for the separate item of "site clearing and grubbing" (item B3) which reflected the savings afforded by the lower Walton-Hayes bid. Tyler testified that it was usually his practice in bidding on contracts to leave blank one item on the bid form, such as site clearing and grubbing, so that it could be filled in to reflect last-minute bids from subcontractors on other items. He further testified that he did not change the name "Hydromatic" on the bid form because of an oversight due to the shortness of time.

On September 27, 1974, sometime after respondent's bid was accepted by the district, Tyler wrote to the district's representative and requested permission to use the Smith & Loveless machinery rather than the Hydromatic equipment. The letter described respondent's receipt and use of the Walton-Hayes bid and stated that refusal of the requested change would cause "financial hardship." Permission for the change was granted by the district's representative on the ground that respondent had committed an excusable mistake. On a date not specified in the record, respondent notified appellant, apparently by telephone, that its subcontract bid had not been accepted. It is clear from these facts that the substitution of subcontractors was made after the award of the prime contract.

### Bid Shopping and Substitution

Respondent chooses to assert that it engaged in a practice known as bid shopping; it then argues that "bid shopping" does not violate the Fair Practices Act unless it occurs after the award of the prime contract.

Bid shopping has been defined as ". . . the use of the low bid already received by the general contractor *to pressure other subcontractors* into submitting even lower bids." (*Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc., supra,* at p. 726, fn. 7; italics added.) The record herein contains no indication that respondent used appellant's bid for that purpose either before or after the award of the prime contract.

■ The Fair Practices Act does not contain the term "bid shopping." Section 4107, as it existed at the times here involved, proscribed the substitution, by a prime contractor whose bid was accepted, of any person as subcontractor in place of the subcontractor listed in the

original bid.[2] The only exception to this proscription which is applicable here concerns relief from inadvertent clerical error, which we discuss below.

Respondent's assertion that the lower Walton-Hayes bid was substituted before the prime contract was awarded cannot avail it. While it may be true that the lower *price* was reflected (through adjustment of the site clearing and grubbing figure) appellant remained the listed subcontractor. Section 4107 prohibits in unambiguous terms the substitution, except in certain circumstances, of one subcontractor for another listed in the bid of the prime contractor. Moreover, that the statute is applicable in situations such as that here under review is suggested by *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc., supra,* 71 Cal.2d 719, upon which respondent relies. There the prime contractor requested and received

[2] Section 4107 provides, in pertinent part:

"No prime contractor whose bid is accepted shall:

"(a) Substitute any person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority, or its duly authorized officer, may, except as otherwise provided in Section 4107.5, consent to the substitution of another person as a subcontractor:

"(1) When the subcontractor listed in the bid after having had a reasonable opportunity to do so fails or refuses to execute a written contract, when such written contract, based upon the general terms, conditions, plans and specifications for the project involved or the terms of such subcontractor's written bid, is presented to him by the prime contractor.

"(2) When the listed subcontractor becomes bankrupt or insolvent, or

"(3) When the listed subcontractor fails or refuses to perform his subcontract, or

"(4) When the listed subcontractor fails or refuses to meet the bond requirements of the prime contractor as set forth in Section 4108, or

"(5) When the prime contractor demonstrates to the awarding authority, or its duly authorized officer, subject to the further provisions set forth in Section 4107.5, that the name of the subcontractor was listed as the result of an inadvertent clerical error, or

"(6) When the listed subcontractor is not licensed pursuant to the Contractors License Law, or

"(7) When the awarding authority, or its duly authorized officer, determines that the work performed by the listed subcontractor is substantially unsatisfactory and not in substantial accordance with the plans and specifications, or that the subcontractor is substantially delaying or disrupting the progress of the work.

"Prior to approval of the prime contractor's request for such substitution the awarding authority, or its duly authorized officer, shall give notice in writing to the listed subcontractor of the prime contractor's request to substitute and of the reasons for such request. Such notice shall be served by certified or registered mail to the last known address of such subcontractor. The listed subcontractor who has been so notified shall have five working days within which to submit written objections to the substitution to the awarding authority. Failure to file such written objections shall constitute the listed subcontractor's consent to the substitution.

"If written objections are filed, the awarding authority shall give notice in writing of at least five working days to the listed subcontractor of a hearing by the awarding authority on the prime contractor's request for substitution."

permission from the awarding authority to make a substitution after the award of the prime contract, apparently on the ground that the plaintiff had been inadvertently listed in the place of the intended subcontractor. (*Id.* at p. 722.) The court held that the plaintiff subcontractor had stated a cause of action for breach of the duty imposed by section 4107. (*Id.,* at p. 727.)

Thus it is apparent not only that respondent violated the Fair Practices Act, but that its conduct fell within the rule enunciated in *Bay Cities Paving & Grading, Inc.* v. *Hensel Phelps Constr. Co.* (1976) 56 Cal.App.3d 361, 365 [128 Cal.Rptr. 632] as follows: "Once the prime contractor's bid is accepted, he is forbidden to make substitutions in place of the subcontractor designated in the original bid except with the consent of the contracting agency." As further noted in *Bay Cities Paving & Grading, Inc.* v. *Hensel Phelps Constr. Co., supra,* the purpose of section 4107 is to protect the original subcontractor against replacement by another subcontractor. (*Id.*)

### *Inadvertent Clerical Mistake*

Although the trial court did not so find or conclude, respondent suggests that the court might have concluded that the listing of appellant as a subcontractor was an excusable clerical mistake. Section 4107 provides that the awarding authority may authorize a substitution where the name of the subcontractor was listed as the result of an inadvertent clerical error. The record does not support such a suggestion. Appellant was not listed by mistake as was the case in *Klose* v. *Sequoia Union High School Dist.* (1953) 118 Cal.App.2d 636 [258 P.2d 515]. There the prime contractor inadvertently listed the name of one subcontractor while using the bid of another in making up his own bid. The *Klose* court concluded that the awarding authority had the power to permit the prime contractor to substitute the name of the subcontractor whose bid had actually been used. This conclusion, however, was based upon the court's finding that former section 4104 (the predecessor of § 4107) gave the awarding authority plenary power to permit the substitution of subcontractors. Moreover, *Klose* was decided at a time when it was held that former section 4104 conferred no rights upon listed subcontractors. A similar interpretation of section 4107 was rejected in *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc., supra,* 71 Cal.2d 719, 725-726. It follows, therefore, that respondent can be relieved of liability only if it complied with sections 4107 and 4107.5 of the act.

## Noncompliance With Statutory Procedure

Section 4107.5 specifies the procedures to be followed when a contractor asserts a claim of clerical error. The section requires that the contractor, as a condition to asserting his claim, give written notice to the awarding authority and furnish a copy of such notice to the listed subcontractor within two working days after the time of the prime bid opening. The record does not show compliance with this requirement.

Respondent's argument that the burden of proving noncompliance is upon appellant is untenable. Respondent, although it did not plead the point, raised the issue in its brief filed below. The burden of producing evidence concerning a defense follows the burden of proof (Evid. Code, § 550). Where a fact is essential to a defense, the burden of proof is on the party raising the defense. (See *Sullivan* v. *Kantel* (1954) 124 Cal.App.2d 723 [269 P.2d 175]; Witkin, Cal. Evidence (2d ed. 1966) § 197, pp. 180-182.)

The substitution herein was not effected in compliance with section 4107.5 and may not be sustained as one for inadvertent clerical error.

The judgment is reversed.

Rattigan, Acting P. J., and Christian, J., concurred.