[No. B125237. Second Dist., Div. Four. Jan. 21, 1999.]

R.J. LAND AND ASSOCIATES CONSTRUCTION COMPANY, Plaintiff and Appellant, v.
KIEWIT-SHEA, Defendant and Respondent.

## Counsel

Moss, Levitt & Mandell and Rodney Moss for Plaintiff and Appellant.

Drummy, King, White & Gire, Leroy M. Gire and Kenneth W. Curtis for Defendant and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

This is an action by a listed subcontractor against the prime contractor of a public work. The subcontractor asserts a statutory cause of action pursuant to the Subletting and Subcontracting Fair Practices Act (Pub. Contract Code, § 4100 et seq.),[1] and *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 727 [79 Cal.Rptr. 319, 456 P.2d 975] (hereafter *Southern Cal. Acoustics*), alleging that the prime contractor's bid to the public agency listed plaintiff as the subcontractor designated to perform "glass paver panel" work, and the prime contractor thereafter unlawfully substituted another subcontractor to do that work.

The parties made cross-motions for summary judgment. The trial court granted the prime contractor's motion and entered a judgment that the subcontractor take nothing. The subcontractor appeals.

We reverse. The prime contractor's contention that the subcontractor has no statutory right to perform the work, because the prime contractor "inadvertently listed two subcontractors" to do that work, is without merit. The trial court should have denied the prime contractor's motion and granted the subcontractor's alternative motion for summary adjudication of the prime contractor's first affirmative defense. The subcontractor was not entitled, however, to summary adjudication of two other issues.

### LEGAL BACKGROUND

In order to make understandable the significance of the facts in the factual statement, we first give the legal context in which they arose. ■ The Subletting and Subcontracting Fair Practices Act (hereafter the act), section 4100 et seq., regulates contracts for public works. It requires the prime contractor to list, in its bid to the public agency, the subcontractors who will be used, and strictly regulates the circumstances under which the listed subcontractors may be changed. Its purpose is to protect the public and

---

[1] All further statutory references are to the Public Contract Code unless otherwise indicated.

subcontractors from the evils of "bid shopping and bid peddling." In "bid shopping," a prime contractor uses the bid of the listed subcontractor to pressure other subcontractors to do the work for even less, to the contractor's profit. In "bid peddling," conversely, other subcontractors undercut the known bid of the listed subcontractor. (*Southern Cal. Acoustics, supra,* 71 Cal.2d 719, 726, fn. 7; *Valley Crest Landscape, Inc.* v. *City Council* (1996) 41 Cal.App.4th 1432, 1438 [49 Cal.Rptr.2d 184].) The Legislature has expressly found, "the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils." (§ 4101.)

To achieve the legislative purpose, the act: (1) requires the prime contractor to list in its bid each subcontractor who will perform work in an amount in excess of one-half of 1 percent of the prime contractor's bid, to describe the work which will be done by each subcontractor, and to list only one subcontractor for each portion as defined in the prime contractor's bid (§ 4104); (2) requires the prime contractor itself to perform any work for which the prime contractor either fails to specify a subcontractor or specifies more than one subcontractor for the same portion of work (§ 4106); and (3) prohibits the prime contractor to substitute any other subcontractor for the subcontractor listed in the original bid, except in specified narrow circumstances (§§ 4107, 4107.5). Section 4107 permits the awarding authority to consent to substitution of a different subcontractor under specified conditions, all but one of which relate to the unwillingness or inability of the listed subcontractor to perform the work. (§ 4107, subd. (a) [(1) subcontractor refuses to execute subcontract, (2) subcontractor becomes bankrupt or insolvent, (3) subcontractor fails or refuses to perform, (4) subcontractor fails or refuses to meet bond requirements, (6) subcontractor not licensed, (7) awarding authority determines subcontractor's work is substantially unsatisfactory or not in substantial accordance with the specifications, or is substantially delaying or disrupting the progress of the work].) The other condition, in section 4107, subdivision (a)(5), occurs when the prime contractor demonstrates to the awarding authority that the name of the subcontractor listed in the original bid was an inadvertent clerical error, but this condition is "subject to the further provisions set forth in Section 4107.5." Section 4107.5 requires that a prime contractor's claim of inadvertent clerical error in the listing of the subcontractor be made "within two working days after the time of the prime bid opening by the awarding authority," with timely notice to both the listed subcontractor and the intended subcontractor, and

provides for a public hearing if the listed subcontractor timely objects. "The two-day written notice provision of section 4107.5 fosters [the legislative purpose of the act] by forcing the prime contractor to assert its error in short order, and on the record, thus minimizing the time in which the contractor can shop for lower bids and limiting the room for deceptive maneuver." (*Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 668 [26 Cal.Rptr.2d 703].)

Any violation of the act subjects the prime contractor to statutory penalties (§ 4110) and disciplinary action by the Contractors State License Board (§ 4111). These penalties do not limit or diminish any legal or equitable rights or remedies a subcontractor may have against the prime contractor. (§ 4103, subd. (a).)

The fact that the prime contractor has listed a subcontractor in the prime contractor's bid does not create a *contract* between them. (*Southern Cal. Acoustics, supra,* 71 Cal.2d at pp. 722-723.) But section 4107 creates a *statutory duty* of the prime contractor toward the subcontractor, because unless the statutory exceptions are satisfied, the prime contractor "ha[s] no right to substitute another subcontractor in place of" the listed subcontractor; the statute "confers the right on the listed subcontractor to perform the subcontract unless statutory grounds for a valid substitution exist. Moreover, that right may be enforced by an action for damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had he not wrongfully been deprived of the subcontract." (*Southern Cal. Acoustics, supra,* 71 Cal.2d at pp. 726, 727, & fn. 9.)

FACTUAL AND PROCEDURAL BACKGROUND

The Metropolitan Transportation Authority (MTA) invited bids for construction of a subway station at Vermont Avenue and Santa Monica Boulevard in Los Angeles. Defendant/respondent Kiewit-Shea, a joint venture, is the prime contractor, and plaintiff/appellant R.J. Land and Associates Construction Company (Land) is the listed subcontractor claiming to have been wrongfully substituted out with respect to performing the "glass paver panel" work.

MTA gave certain plans and specifications for the project. Among the categories of work in MTA's plans and specifications were the following: (1) concrete unit masonry, item No. 4220, consisting of furnishing materials and performing work to complete the concrete unit masonry installation as indicated; (2) precast concrete, item No. 3410, consisting of furnishing and installing precast covers for walkways, train control and communication

trenches and steps, using lightweight concrete, precast concrete manholes, access hatches and crossover structures using normal weight concrete, precast concrete edge pavers and benches, and custom precast concrete platform base benches; and (3) precast glass paver panels, item No. 4275, consisting of furnishing and installing precast glass paver panels composed of glass paver units, mortar, concrete, joint reinforcement, sealant and other items required for a finished installation.

Prior to submitting its prime bid due July 15, 1993, Kiewit-Shea received hundreds of proposals from subcontractors. As customary, some of these proposals were received just minutes before the deadline for submission of sealed prime bids. As customary, Kiewit-Shea maintained telephone contact with an agent located near where the prime bid was to be submitted, for the purpose of making last-minute adjustments. Kiewit-Shea listed many subcontractors tentatively, but left a few blanks for the purpose of making last-minute adjustments in the total bid.

Kiewit-Shea received from Land a bid for "Concrete Unit Masonry," item No. 4220, in the amount of $272,162, and for "Glass Block Panels," item No. 4275, in the amount of $425,739. Kiewit-Shea tentatively used Land's prices of $272,000 for concrete masonry units (abbreviated CMU) and $426,000 for "Precast Glass Panels." In its list of proposed subcontractors submitted to MTA as required by section 4104, Kiewit-Shea *listed Land as the subcontractor for "CMU" and "Glass paver" in the total amount of $698,000 (i.e., $272,000 plus $426,000).*

At the last minute, but before submitting its prime bid, Kiewit-Shea received from Willis Construction Co., Inc. (Willis) a proposal for "precast concrete items" including $161,000 relating to item No. 3410, precast concrete, and $311,000 for item No. 4275, glass paver panels.

Before submitting its prime bid, Kiewit-Shea modified its bid to reduce the total bid by $115,000. Kiewit-Shea's intention was to use Willis's bid of $311,000 for glass paver panels, in place of Land's bid of $426,000 for glass paver panels, a difference of $115,000. In its list of proposed subcontractors filed pursuant to section 4104, Kiewit-Shea listed and circled Willis as subcontractor for *"PC Concrete" in the amount of $311,000.* Kiewit-Shea circled its previous listing of Land as the proposed subcontractor, intending to use Land for concrete masonry units only, but *neglected to cross out "glass paver," or to change the amount as to Land, so that the listing of Land continued to describe the work to be done by Land as "CMU" and "Glass paver" in the amount of $698,000.* Kiewit-Shea did not discover nor move to

correct these errors within the two-day time limit provided in section 4107.5 for seeking correction of inadvertent clerical errors. Kiewit-Shea contends it did not discover the errors until sued by Land in the present case.

Kiewit-Shea's bid was accepted by MTA. On or about September 1, 1994, Kiewit-Shea signed a subcontract with Land for the CMU work only, on the assumption Willis would do the glass paver panel work. Land completed the CMU contract and was fully paid for it. There is no dispute as to Land's CMU contract; the dispute here is that Land contends it was also listed as the subcontractor for the glass paver panel work but was not given the subcontract for glass paver panel work.

In May 1996, Willis informed Kiewit-Shea that Willis was unable to perform the glass paver panel work. In June 1996, Kiewit-Shea obtained consent from MTA (presumably pursuant to section 4107, subdivision (a)(1) or (a)(3)) to substitute Glass Block Installers (not Land) in place of Willis to do the glass paver panel work.

In February 1998, Land filed the present action for breach of statutory duty, contending that Land was listed as the subcontractor for the glass paver panel work and was wrongfully substituted out. Land sought its lost profits which it calculated as $185,739 (the difference between its subcontract bid of $425,739, and $240,000, the amount Land claimed it would have cost Land to perform the subcontract).

Kiewit-Shea answered the complaint, generally denying the allegations of the complaint and asserting affirmative defenses that (1) Land has no "right to perform the glass paver work," because Kiewit-Shea had inadvertently listed two subcontractors to perform glass paver panel work, and (2) Land's claim is barred by the statute of limitations.

Land moved for summary judgment for $185,739, supported by the declaration of Roderick J. Land (Mr. Land) that Land's profit would have been $185,739. Land amended its motion to request, in the alternative, summary adjudication that Kiewit-Shea's first affirmative defense (no right to perform the work) and second affirmative defense (statute of limitations) were without merit.

Kiewit-Shea filed its motion for summary judgment. Kiewit-Shea's motion for summary judgment was based solely on its contention that Land had no right to perform the subcontract. Kiewit-Shea also filed its opposition to Land's motions for summary judgment and summary adjudication, contending that Kiewit-Shea's first affirmative defense was meritorious for the same

reason indicated in Kiewit-Shea's motion for summary judgment, and that there were triable issues of fact as to the second affirmative defense (statute of limitations) and damages.

Land filed its opposition to Kiewit-Shea's motion for summary judgment, and each party filed a reply to the other party's opposition papers.

The trial court granted Kiewit-Shea's motion for summary judgment. This ruling mooted Land's motions for summary judgment and summary adjudication of issues. The trial court's July 17, 1998, order granting summary judgment states, "RJ Land concedes that if two subcontractors were listed by Kiewit for the same item of work (in this case Section 04275 of the MTA's Specifications—Precast Glass Paver Panels), then pursuant to Public Contract Code Section 4106, RJ Land had no right to perform the work and, correspondingly, no claim for relief against Kiewit.[2] It is undisputed that Kiewit listed two subcontractors (RJ Land and Willis Construction Co., Inc.) for the same item of work." The court entered a judgment that Land take nothing by its complaint, and Land appealed from the judgment.

## Discussion

### Standard of Review

■ Summary judgment shall be granted if all the moving papers show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) If a cause of action or an affirmative defense similarly lacks any triable issue of material fact, the trial court may grant summary adjudication of issues, if the adjudication completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f).) An appellate court independently reviews the questions of law presented and whether the papers raise triable issues of fact. (*Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

### Main Issue

■ The argument for Land is relatively simple: in the bid submitted pursuant to section 4104, Kiewit-Shea listed Land as the subcontractor for

---

[2]Land conceded this point during argument on the motions in the trial court. As discussed *post*, we do not accept this concession, which involves a question of pure law concerning the proper interpretation of the statutory scheme.

glass paver panels; Kiewit-Shea had no lawful basis under the act to substitute any other subcontractor for the glass paver panel work, as there is no contention that Land was unable or unwilling to do the work, and Kiewit-Shea did not timely invoke the statutory procedure to claim that the listing of Land for the glass paver panel work was an inadvertent clerical error; therefore, pursuant to *Southern Cal. Acoustics* Land has a cause of action for breach of a statutory duty to award that work to Land.

The theory of the summary judgment for Kiewit-Shea, which is the same as Kiewit-Shea's first affirmative defense, runs as follows: Kiewit-Shea's bid should be interpreted as having (inadvertently) listed *two* subcontractors, Land and Willis, to do the glass paver panel work; under section 4106, if a prime contractor lists two subcontractors to do the same work, the prime contractor must do the work itself; therefore, unlike the circumstances in *Southern Cal. Acoustics, supra,* 71 Cal.2d at page 727, Land has no "right" to a subcontract.

We agree with Land that the relevant undisputed facts refute Kiewit-Shea's defense.

Kiewit-Shea has repeatedly asserted, below and on appeal, that it is "undisputed" Kiewit-Shea listed two subcontractors for glass paver panel work in its bid. It is not true that this assertion was undisputed by Land. Land's separate statement of facts in opposition to Kiewit-Shea's motion for summary judgment expressly disputed this alleged fact, and asserted to the contrary that Kiewit-Shea's bid listed Willis only for "precast concrete," *not* glass paver panels. Kiewit-Shea asserted in reply that Mr. Land *admitted* in his deposition that Kiewit-Shea's bid listed Willis for glass paver panels. This argument gives unwarranted effect to Mr. Land's testimony. Mr. Land conceded that the $311,000 amount listed under Willis for "PC Concrete" coincided with the amount Willis proposed to Kiewit-Shea for the glass paver panel work. Mr. Land was then asked, "Do you have any reason to doubt, based upon this information, that that was a listing of Willis Construction for the glass paver panels," to which he responded "no." Mr. Land's counsel appropriately objected this was a mere legal conclusion. The doctrine that admissions made in depositions are given great weight does not apply to mere legal conclusions. ■ (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (3 The Rutter Group 1998) ¶ 10:158.1, p. 10-57, rev, #1, 1998.)

■ Not only did Land "dispute" that Kiewit-Shea's bid listed two subcontractors for glass paver panels, Land correctly contended, we hold,

that the *relevant* undisputed facts show Kiewit-Shea's bid did *not* list two subcontractors for the glass paver panel work. The bid described the work to be performed by Willis as "PC Concrete." The record includes MTA's specifications, which show, as described, *ante*, that "Precast Concrete," item No. 3410, is different from "Precast Glass Paver Panels," item No. 4275.

Kiewit-Shea offers an elaborate argument that undisputed facts prove Kiewit-Shea listed Willis for the glass paver panel work. Kiewit-Shea contends that the term "PC concrete" in Kiewit-Shea's listing of Willis must be interpreted to refer to glass paver panels.[3] Kiewit-Shea relies on the following: item No. 4275 of MTA's specifications refers to "precast" glass paver panels, and includes "concrete" as *one* of the components of precast glass paver panels; Willis's *bid to Kiewit-Shea* stated Willis's "proposal for the listed precast concrete items," and divided its proposal into "A: section 3410" ($186,000 for platform edge pavers, benches, and color banding) and "B: section 4275" ($311,000 for glass paver panels); Kiewit-Shea listed Willis as subcontractor in the amount of $311,000, which is the same as Willis's proposal for glass paver panels; and Willis's bid to Kiewit-Shea relating to item No. 3410 was only $186,000, which was less than one-half of 1 percent of Kiewit-Shea's total bid of $50,879,361, therefore Kiewit-Shea would have no reason to list Willis for precast concrete, item No. 3410.

None of these factors appear on the face of the bid submitted by Kiewit-Shea to MTA. Kiewit-Shea's bid, not Willis's proposal to Kiewit-Shea, is the statutorily required document on which MTA, the public, and Land were entitled to rely. (See *Southern Cal. Acoustics, supra*, 71 Cal.2d at p. 727, fn. 9 [subcontractor may rely]; *Valley Crest Landscape, Inc.* v. *City Council, supra*, 41 Cal.App.4th at pp. 1439-1440 [public agency may rely].)

The factors cited by Kiewit-Shea show only that Kiewit-Shea *intended* the listing for Willis to be for glass paver panels. Kiewit-Shea's *intention* is not sufficient to defeat Land's statutory cause of action. A similar fact pattern occurred in *Coast Pump Associates* v. *Stephen Tyler Corp.* (1976) 62 Cal.App.3d 421 [133 Cal.Rptr. 88]. Coast Pump was the subcontractor listed by the prime contractor Stephen Tyler to furnish pumping equipment. As here, the prime contractor left a few blanks in the bid to make last-minute changes. The prime contractor received a lower bid from Walton-Hayes Associates to furnish pumping equipment. Intending to utilize the latter bid

---

[3]In Kiewit-Shea's bid to MTA, the "Description of Work to be Subcontracted" column states, "PC Concrete" next to Willis and "CMU" and "Glass Paver" next to Land. At oral argument, counsel for Kiewit-Shea asserted that a prime contractor is not required to describe the work in this column in elaborate detail or by reference to specification numbers.

for pumping equipment, the prime contractor filled out a blank for "site clearing and grubbing" to reflect the difference in price. (*Id.* at pp. 423-424.) The court held that Coast Pump had a valid *Southern Cal. Acoustics* claim against the prime contractor because, "[w]hile it may be true that the lower *price* was reflected (through adjustment of the site clearing and grubbing figure) appellant [Coast Pump] remained the listed subcontractor [for pumping equipment]." (*Id.* at p. 425.) Similarly here, Kiewit-Shea may have *intended* to list Willis as the subcontractor for glass paver panels, and *intended* to list Land for "CMU" only. But Kiewit-Shea did not act within the two-day time limit provided in section 4107.5 for correcting its inadvertent clerical errors. (Compare *Coast Pump Associates* v. *Stephen Tyler Corp., supra,* 62 Cal.App.3d at pp. 426-427 [noncompliance with two-day notice requirement of section 4107.5] with *Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist., supra,* 21 Cal.App.4th 655, 668-669 [faxed letter within one day substantially complied with two-day notice requirement of section 4107.5].) The statutory scheme allows for the last-minute bidding process by requiring the prime contractor, within two working days, to review its bid and move to correct clerical errors in the listing of subcontractors.

 Finally, even assuming that Kiewit-Shea's bid can be interpreted as listing *two* subcontractors for the glass paver panel work, Kiewit-Shea's theory that this defeats Land's cause of action under *Southern Cal. Acoustics, supra,* 17 Cal.2d 719, is without merit.[4] Section 4104, subdivision (b) *prohibits* listing two subcontractors for the same work: "The prime contractor shall list only one subcontractor for each portion as is defined by the prime contractor in his or her bid." Despite section 4104, subdivision (b), Kiewit-Shea relies on section 4106 which provides in pertinent part: "If a prime contractor fails to specify a subcontractor or if a prime contractor specifies more than one subcontractor for the same portion of work to be performed under the contract in excess of one-half of 1 percent of the prime contractor's total bid, the prime contractor agrees that he or she is fully qualified to perform that portion himself or herself, and that the prime contractor shall perform that portion himself or herself." Kiewit-Shea contends section 4106 means that *only* Kiewit-Shea, and *neither* Land nor Willis, had a "right to perform the subcontract," and concludes Land therefore has no cause of action under *Southern Cal. Acoustics.*

Kiewit-Shea cannot avail itself of this argument, because Kiewit-Shea did *not* perform the glass paver panel work itself, but subcontracted that work to

---

[4]As noted *ante,* footnote 2, Land conceded this point to Kiewit-Shea in Land's argument to the trial court. But this point involves a question of pure law, statutory interpretation. In the public interest we have discretion to reject Land's concession, because our function to correctly interpret the statute is not controlled by Land's concession of its meaning. (See *Fox* v. *State Personnel Bd.* (1996) 49 Cal.App.4th 1034, 1039 [57 Cal.Rptr.2d 279]; *Burckhard* v. *Del Monte Corp.* (1996) 48 Cal.App.4th 1912, 1918 [56 Cal.Rptr.2d 569].)

Glass Block Installers. Under Kiewit-Shea's interpretation, a prime contractor could list two subcontractors for the same item of work and then invite them to bid against each other to get the work, and neither subcontractor could complain. This would frustrate the policy of the act and the *Southern Cal. Acoustics* enforcement mechanism. (See *Southern Cal. Acoustics, supra,* 71 Cal.2d at p. 726, fn. 7 ["Subsequent to the award of the prime contract at a set price, the prime contractor may seek to drive down his own cost, and concomitantly increase his profit, by soliciting bids lower than those used in computing his prime bid. When successful this practice places a profit squeeze on subcontractors, impairing their incentive and ability to perform to their best, and possibly precipitating bankruptcy in a weak subcontracting firm."].) Section 4106 itself provides a penalty ("[t]he prime contractor shall be subject to the penalties named in Section 4111 [discipline by Contractors State License Board]") if, as here, the prime contractor nevertheless subcontracts the work after listing two subcontractors for the same work. Section 4106 should not be construed to defeat Land's *Southern Cal. Acoustics* claim in the manner advocated by Kiewit-Shea. Section 4103 provides, "Nothing in this chapter limits or diminishes any rights or remedies, either legal or equitable, which: [¶] (a) An original or substituted subcontractor may have against the prime contractor, his or her successors or assigns." (See also § 4112 ["The failure on the part of a contractor to comply with any provision of this chapter does not constitute a defense to the contractor in any action brought against the contractor by a subcontractor."].) Contrary to Kiewit-Shea's argument, we find nothing in *Southern Cal. Acoustics, supra,* 71 Cal.2d at page 727, which impliedly precludes a cause of action by a listed subcontractor when the prime contractor, claiming to have listed two, awards the subcontract to another.

It follows that the summary judgment in favor of Kiewit-Shea must be reversed, and also that Land was entitled to summary adjudication of Kiewit-Shea's first affirmative defense.

### *Other Issues*

In its motions below, Land sought more than the mere defeat of Kiewit-Shea's motion for summary judgment or the mere summary adjudication in favor of Land as to Kiewit-Shea's first affirmative defense. Land, as plaintiff, sought an entire summary judgment in Land's favor. Land offered the declaration of Mr. Land claiming the specific amount of $185,739 as damages. Land contended there was no material issue of fact as to Land's lost profits, thus the issue of damages could be summarily adjudicated in Land's favor. Land further contended that Kiewit-Shea's other affirmative defense,

statute of limitations, could also be summarily adjudicated in Land's favor. In opposition to Land's motion for summary adjudication of the damages and statute of limitations issues, Kiewit-Shea raised issues of fact as to both. (Kiewit-Shea's own motion for summary judgment was based solely on the issue of Land's right to the subcontract; Kiewit-Shea did not contend that it was entitled to summary judgment based on the statute of limitations defense.)

Land's requests for summary adjudication of the statute of limitations and damages issues may be reviewed upon appeal from the summary judgment (*White Motor Corp.* v. *Teresinski* (1989) 214 Cal.App.3d 754, 764, fn. 17 [263 Cal.Rptr. 26]), but in this case they require only brief discussion. These issues clearly involve triable issues of fact rendering summary adjudication inappropriate.

*Damages.*

In support of Land's motion for summary judgment, Mr. Land declared that the "cost to plaintiff to [*sic*] the glass block paver work would have been in the sum of $240,000.00 as set forth on the calculation of costs prepared by plaintiff and attached hereto as Exhibit 'C.' " Exhibit C was an unsigned, undocumented, simple tabular calculation which listed five different entries under "labor," totaling $13,000. In opposition to Land's motion, Kiewit-Shea objected to Land's conclusory declaration and submitted impeaching evidence from Mr. Land's deposition and application to MTA in connection with the owner controlled insurance program, in which Land estimated its payroll costs to perform the glass paver panel work would be $127,721. Mr. Land explained this in his deposition by asserting the latter figure was just something he "fabricated" because, "[b]asically you are required to turn in something to the M.T.A., and I just fabricated a figure to give to them to suffice for the insurance program." On motion for summary adjudication, the trial court was not required to accept Mr. Land's declaration. (Code Civ. Proc:, § 437c, subd. (e).) There was a substantial basis upon which to doubt the estimate of lost profits in exhibit C. The issue of damages is ordinarily a triable issue of fact.

*Statute of limitations.*

Land's complaint was filed on February 19, 1998. As described in *Southern Cal. Acoustics,* Land's cause of action is for "breach of a statutory duty" pursuant to section 4107. (71 Cal.2d at pp. 722, 727.) The applicable statute of limitations is therefore three years, for "[a]n action upon a liability created by statute." (Code Civ. Proc., § 338, subd. (a).) But the record is full of

factual conflicts and ambiguities as to when Land's cause of action *arose*. The declaration of Douglas Duplisea, Kiewit's area manager, submitted in support of Kiewit-Shea's motion for summary judgment suggests that Kiewit-Shea's bid was submitted to MTA on July 15, 1993. The declaration of Mr. Land in support of Land's motion for summary judgment says, without further explanation, that MTA awarded the contract to Kiewit-Shea "[b]etween July 15, 1993 and October 7, 1993." Mr. Land's declaration stated that Land entered a subcontract with Kiewit-Shea for the *CMU* work on September 1, "1994" (*sic*), but that Land was "not further contacted by defendants with regard to the glass block paver work," and that Land "discovered the fact that [G]lass [B]lock [I]nstallers did the glass block paver work approximately November 15, 1997." In opposition to Land's motion for summary adjudication of the statute of limitations issue, Kiewit-Shea pointed out that Mr. Land admitted in his deposition that, shortly after July "1993" (*sic*), when Land *was* given the *CMU* subcontract, Mr. Land telephoned and inquired "if we were going to do the glass block panels," and was told "No," whereupon he "just let it go at that point."

This ambiguous and conflicting evidence does not permit summary adjudication in favor of Land on the statute of limitations.

## DISPOSITION

The judgment is reversed. The cause is remanded for such further proceedings as may be necessary, consistent with the views expressed in this opinion. The parties shall bear their own costs on appeal.

Hastings, J., and Curry, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 21, 1999.