138 Nev., Advance Opinion 71

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CHRISTOPHER BEAVOR, AN INDIVIDUAL, <br> Appellant, <br> vs. <br> JOSHUA L. TOMSHECK, AN INDIVIDUAL, <br> Respondent. | No. 81964 <br><br> FILED <br> NOV 10 2022 <br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY _____ <br> CHIEF DEPUTY CLERK |

Appeal from a district court order granting summary judgment in a legal malpractice action. Eighth Judicial District Court, Clark County; James Crockett, Judge.

*Affirmed in part, reversed in part, and remanded.*

E. Brent Bryson, P.C., and E. Brent Bryson, Las Vegas; Cohen Johnson, LLC, and H. Stan Johnson and Ryan D. Johnson, Las Vegas, for Appellant.

Olson, Cannon, Gormley & Stoberski and Max E. Corrick, II, Las Vegas, for Respondent.

---

BEFORE THE SUPREME COURT, HARDESTY, STIGLICH, and HERNDON, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we are asked to decide whether the proceeds from a legal malpractice claim may be assigned to an adversary in the same litigation that gave rise to the alleged legal malpractice. We have

22-35461

previously held that the assignment of a legal malpractice *claim* is prohibited as a matter of public policy. *See Tower Homes, LLC v. Heaton*, 132 Nev. 628, 635, 377 P.3d 118, 122 (2016); *Chaffee v. Smith*, 98 Nev. 222, 223-24, 645 P.2d 966, 966 (1982). Allowing a client who is damaged by his or her attorney to assign the malpractice claim to a third party threatens the integrity of the highly personal and confidential attorney-client relationship and creates an incentive for the client to file a malpractice claim against the attorney and sell it to the highest bidder, even if the claim lacks merit.

At issue in this case is the assignability of the *proceeds* from a legal malpractice action, rather than the action itself. We limit our consideration of this issue to the specific context presented in this case—the assignment of proceeds to an adverse party in the underlying litigation from which the alleged malpractice arose. Because such an assignment would allow parties to use legal malpractice claims as a bargaining chip in settlement negotiations, as occurred here, we conclude that public policy prohibits an assignment of proceeds from a legal malpractice claim to an adversary in the underlying litigation. For this reason, the district court properly invalidated the assignment at issue. However, we also conclude that an invalid assignment does not, by itself, preclude an injured client from pursuing the legal malpractice claim where the assignment has been set aside. Thus, we affirm in part and reverse in part the district court's order granting summary judgment, and we remand this matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

This dispute began when Yacov Hefetz loaned $2.2 million to Toluca Lake Village, LLC, to fund the purchase of property. The loan was secured by appellant Christopher Beavor's personal residence in a guaranty

agreement. Toluca Lake filed bankruptcy, and Beavor did not repay the $2.2 million loan. Hefetz sued Beavor for breaching the guaranty agreement. The jury returned a verdict in favor of Beavor.

After the verdict, Hefetz hired a new attorney, H. Stan Johnson, and filed a motion for a new trial. Beavor also hired a new attorney, respondent Joshua Tomsheck, who filed an opposition arguing only that Hefetz's motion for a new trial was untimely. The district court concluded that the motion was timely and granted a new trial because Beavor did not substantively oppose Hefetz's arguments. Beavor did not timely appeal this ruling. The lawsuit proceeded, and Tomsheck withdrew as Beavor's attorney. Later, Beavor sent a letter to Tomsheck informing him that he might file a legal malpractice claim based on Tomsheck's allegedly deficient performance. Beavor hired another attorney and filed a motion to dismiss Hefetz's complaint, which the district court granted. We reversed for reasons that do not affect the analysis in the instant appeal. *See Hefetz v. Beavor*, 133 Nev. 323, 331, 397 P.3d 472, 478 (2017).

On remand, Hefetz and Beavor reached a settlement agreement to dismiss the litigation. In addition to settlement payments in the amount of $300,000, Beavor agreed to prosecute his legal malpractice claim against Tomsheck and to "irrevocably assign[ ] any recovery or proceeds" from that claim to Hefetz. To effectuate the assignment, Beavor agreed that he would sign a conflict waiver to allow Johnson—Hefetz's attorney—to represent him regarding the legal malpractice claim. The parties agreed that Hefetz would pay Johnson to prosecute Beavor's claim. Beavor further agreed that he would provide Johnson with all documents relating to Tomsheck's representation and do nothing intentional to impair the value of any recovery. The agreement, however, provided that Beavor would retain the

right to decide whether he would settle the litigation with Tomsheck. The agreement also required Beavor to execute a confession of judgment in favor of Hefetz in the amount of $2 million, which would be recorded should Beavor breach his obligations under the settlement agreement.

Beavor complied with the settlement agreement by suing Tomsheck for legal malpractice. Tomsheck moved for summary judgment on the ground that Beavor impermissibly assigned his claim to Hefetz. In opposition, Beavor argued that the assignment did not violate public policy because he still retained control of the lawsuit and assigned only the proceeds of the action to Hefetz. The district court concluded that the assignment was invalid because Beavor transferred control of the litigation to Hefetz and the assignment was to an adversary from the same litigation in which the malpractice arose. The district court also concluded that the assignment was framed as an assignment of proceeds to circumvent the public policy that would otherwise bar such an assignment. Finally, the district court concluded that Beavor could not reassert his claim against Tomsheck because the assignment was irrevocable. Thus, the district court granted summary judgment to Tomsheck. This appeal followed.

## DISCUSSION

A summary judgment will be affirmed if this court's de novo review of the evidence—viewed in the light most favorable to the nonmovant—shows "that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (alteration in original) (internal quotation marks omitted).

SUPREME COURT
OF
NEVADA

(O) 1947A

4

*Assigning the proceeds of a legal malpractice claim to an adversary from the same litigation that gave rise to the malpractice claim violates public policy*

Beavor argues that the district court erred in granting summary judgment against him because our precedents allow parties to assign the proceeds from legal malpractice claims if the damaged client retains control of the litigation and was the party who pursued the malpractice claim. He contends that he controlled the litigation and previously pursued the claim, so the assignment of the proceeds was valid. Tomsheck argues that legal malpractice claims and the proceeds from such claims cannot be assigned to a former adversary from the same litigation that gave rise to the alleged malpractice. Thus, Tomsheck asserts that the district court properly invalidated the assignment.

Our precedents governing the assignment of legal malpractice claims detail the policy concerns associated with such an assignment. In *Chaffee v. Smith*, we held that "[a]s a matter of public policy, we cannot permit enforcement of a legal malpractice action which has been transferred by assignment . . . but which was never pursued by the original client." 98 Nev. 222, 223-24, 645 P.2d 966, 966 (1982). We explained that "[t]he decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client." *Id.* at 224, 645 P.2d at 966. Later, in *Tower Homes, LLC v. Heaton*, we held that an assignment of a legal malpractice claim violates public policy because the assignor no longer controls the claim. 132 Nev. 628, 635, 377 P.3d 118, 122 (2016). Relying on the California Court of Appeal's decision in *Goodley v. Wank & Wank, Inc.*, we explained that allowing the assignee of a legal malpractice claim to control the litigation against the assignor's attorney "embarrass[es] the attorney-client relationship and imperil[s] the sanctity of the highly confidential and fiduciary relationship existing between attorney and

client." *Id.* at 635, 377 P.3d at 123 (quoting *Goodley v. Wank & Wank, Inc.*, 133 Cal. Rptr. 83, 87 (Ct. App. 1976)). The *Goodley* court reasoned that allowing the assignment of a legal malpractice claim effectively "convert[s] it to a commodity . . . [that is] transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty." 133 Cal. Rptr. at 87. This would allow legal malpractice claims to be exploited, presenting a plethora of "probabilities that could only debase the legal profession." *Id.* It is our duty to prevent a practice that could jeopardize or harm members of the legal profession or the public. For that reason, our precedents bar the assignment of a legal malpractice claim.

While this court has previously addressed assignments of legal malpractice *claims*, we have not considered whether the *proceeds* of such claims can be assigned. In other contexts, we have held that the assignment of the proceeds of a personal-injury claim, rather than the claim itself, is permissible because such an assignment permits the injured plaintiff to retain control of the litigation without interference from the assignee. *See Achrem v. Expressway Plaza Ltd. P'ship*, 112 Nev. 737, 741, 917 P.2d 447, 449 (1996); *see also Reynolds v. Tufenkjian*, 136 Nev. 145, 149, 461 P.3d 147, 151 (2020). Beavor invites us to allow a damaged client to assign the proceeds from a legal malpractice claim if the client retains control of the litigation. He asserts that, under this proposed rule, his assignment to Hefetz was permissible.

To resolve this case, we need not accept Beavor's invitation to answer the broader question of whether assigning the proceeds of a legal malpractice claim is prohibited in all instances, but instead confine our decision to assignments to an adverse party in the underlying litigation. We

hold, like the Supreme Court of Connecticut in *Gurski v. Rosenblum &
Filan, LLC*, "that neither a legal malpractice claim nor the proceeds from
such a claim can be assigned to an adversary in the same litigation that
gave rise to the alleged malpractice." 885 A.2d 163, 167 (Conn. 2005). As
the *Gurski* court determined, the assignment of a legal malpractice claim—
or the proceeds of such a claim—to *the adversary* in the litigation that gave
rise to the malpractice "creates the opportunity and incentive for collusion
in stipulating to damages in exchange for an agreement not to execute on
the judgment in the underlying litigation." *Id.* at 174; *see also, e.g., Skipper
v. ACE Prop. & Cas. Ins. Co.*, 775 S.E.2d 37, 38 (S.C. 2015) ("Were we to
permit such assignments, plaintiffs and defendants would be incentivized
to collude against the defendant's attorney."); *Kenco Enters. Nw., LLC v.
Wiese*, 291 P.3d 261, 263 (Wash. Ct. App. 2013) (noting that the mere
opportunity for collusion, regardless of whether collusion actually occurs,
"converts legal malpractice into a commodity").

In addition to the potential of collusion, the assignability of a
malpractice claim to an adversary carries the risk that the malpractice
claim will be used to settle a client's case. As the Indiana Supreme Court
warned in *Picadilly, Inc. v. Raikos*, such assignments "would become an
important bargaining chip in the negotiation of settlements—particularly
for clients without a deep pocket." 582 N.E.2d 338, 343 (Ind. 1991),
*abrogated on other grounds by Liggett v. Young*, 877 N.E.2d 178 (Ind. 2007).
If such assignments were permitted, adversaries could offer financially
strapped parties a favorable settlement in exchange for their legal
malpractice claims. *Id.* Not only could this undermine attorney-client
relationships and confidences, but it implicates the same policy concerns
discussed by the *Goodley* court—that a malpractice claim could be turned

into a "commodity to be exploited," which would encourage unjustified lawsuits against attorneys, increase legal malpractice litigation, and ultimately debase the legal profession. 133 Cal. Rptr. at 87.

The concerns discussed above apply with equal force when only the *proceeds* of a legal malpractice claim are assigned to the adverse party in the underlying litigation. Regardless of whether the client assigns the malpractice claim itself or only the future proceeds from that claim to an adversary, the result is the same—the adversary will have an interest in any recovery from the legal malpractice claim. Thus, the same potential for turning a legal malpractice claim into a commodity or bargaining chip exists when only the proceeds of those claims are assigned, as this case illustrates. Here, as part of the settlement agreement between Beavor and Hefetz, Beavor had to prosecute his legal malpractice claim and transfer his recovery from that claim to Hefetz. Though Beavor did not assign the malpractice claim to Hefetz, he agreed to litigate his malpractice claim for the benefit of Hefetz, effectively using the legal malpractice claim as a bargaining chip. This is the exact danger *Picadilly* warned against. Because public policy prohibits the assignment of proceeds from a legal malpractice claim to the adversary in the underlying litigation, we conclude that the district court correctly invalidated Beavor's assignment to Hefetz.[1]

---

[1]We assume without deciding that the assignment is properly characterized here as an assignment of proceeds rather than an assignment of the legal malpractice claim. In light of our conclusion, we need not determine whether Beavor retained control of the litigation such that he assigned only the proceeds of the malpractice claim.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Beavor retains the claim against Tomsheck even though the assignment of proceeds is invalid*

Relying on cases from other jurisdictions, Beavor argues that even if the assignment of proceeds is invalid, he retains the right to assert his legal malpractice claim on his own behalf against Tomsheck. Tomsheck argues that we held in *Tower Homes* that a legal malpractice claim is extinguished following an invalid assignment. We disagree with Tomsheck's reading of *Tower Homes* and join with other jurisdictions that recognize that an injured client may pursue a legal malpractice claim following an invalid assignment of the proceeds of that claim.

In *Tower Homes*, the bankruptcy court entered an order authorizing the bankruptcy trustee to permit a group of creditors to pursue Tower Homes' malpractice claim against its former attorneys. 132 Nev. at 631-32, 377 P.3d at 120-21. The creditors controlled the litigation and would receive all financial benefits from the claim. *Id.* While recognizing that bankruptcy statutes permit bankruptcy creditors to bring debtor malpractice claims on behalf of the bankruptcy estate under certain conditions, this court determined that the creditors were not actually bringing a claim on behalf of the estate and thus the bankruptcy court's order constituted an impermissible assignment of a legal malpractice claim to them in violation of *Chaffee*, 98 Nev. at 223-24, 645 P.2d at 966. *Tower Homes*, 132 Nev. at 633-34, 377 P.3d at 121-22. The creditors argued that "the portion of the bankruptcy court order allowing [them] to retain any recovery should be ignored and the proceeds should revert back to the estate." *Id.* at 635 n.2, 377 P.3d at 123 n.2. However, we rejected that argument because the creditors "cited no authority to support a remedy that would result in rewriting the bankruptcy court's order severing [their] rights to the proceeds" from the invalid assignment. Thus, *Tower Homes*

SUPREME COURT
OF
NEVADA

(O) 1947A

9

did not address whether the claim was extinguished, but only whether the creditors could pursue it.

In distinguishing *Tower Homes*, Beavor directs our attention to several persuasive authorities that lead to the relatively straightforward conclusion that Beavor should be able to assert his claim for legal malpractice notwithstanding the invalid assignment. *See generally Kommavongsa v. Haskell*, 67 P.3d 1068, 1070-72, 1083 (Wash. 2003) (allowing the injured client to pursue the legal malpractice claim following the invalid assignment of that claim); *see also Weston v. Dowty*, 414 N.W.2d 165, 167 (Mich. Ct. App. 1987) (explaining that an invalid assignment does not warrant dismissal of a legal malpractice claim); *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 634 (Tex. Ct. App. 2000) ("[T]he plaintiff's right to bring his own cause of action for [legal] malpractice is not vitiated by [an] invalid assignment."). We therefore hold that a legal malpractice claim is vested in the client, and an invalid assignment, by itself, does not prevent an injured client from pursuing a legal malpractice claim where the assignment has been set aside. For that reason, we reverse the district court's grant of summary judgment on that issue and remand for further proceedings consistent with this opinion.[2]

---

[2]Tomsheck also argues that the settlement agreement provided for an irrevocable assignment of the legal malpractice claim, thus precluding Beavor from pursuing the claim in his own name. Beavor maintains that the settlement agreement contains a severance clause, so any invalid portion of the claim still leaves the settlement agreement intact. We decline to interpret the settlement agreement because Tomsheck is not a party to it.

(O) 1947A

## CONCLUSION

We hold that neither a legal malpractice claim nor the proceeds from such a claim can be assigned to an adversary from the same litigation that gave rise to the alleged malpractice. Thus, we conclude that the district court correctly invalidated Beavor's assignment to Hefetz. However, we further hold that a legal malpractice claim is vested in the injured client and, generally, an invalid assignment of the claim or proceeds does not warrant dismissal of the legal malpractice claim. Accordingly, we reverse that portion of the district court's order granting summary judgment, and we remand this matter for further proceedings consistent with this opinion.

_____, J.
Hardesty

We concur:

_____, J.
Stiglich

_____, J.
Herndon